Filed 8/10/26  Not Too Big to Fall Assn. v. Wells Fargo Bank CA5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| NOT TOO BIG TO FALL ASSOCIATION, INC., <br><br> Plaintiff and Appellant, <br><br> v. <br><br> WELLS FARGO BANK, N.A., <br><br> Defendant and Respondent. | F088171 <br><br> (Super. Ct. No. 19CECG03998) <br><br> **OPINION** |

-ooOoo-

APPEAL from an order of the Superior Court of Fresno County.  D. Tyler Tharpe, Judge.

Law Offices of Brian J. Jacobs, Brian J. Jacobs; Robert B. Miller Law and Robert B. Miller for Plaintiff and Appellant.

Severson & Werson, Stinson, Jan T. Chilton and Mary Kate Sullivan for Defendant and Respondent.

-ooOoo-

Plaintiff appeals from an order dismissing with prejudice its wrongful foreclosure and other claims against defendant Wells Fargo Bank, N.A.  The challenged foreclosures

were initiated by Wells Fargo under deeds of trust assigned to Wells Fargo as the trustee of securitized trusts—that is, trusts that issue mortgage-backed securities to investors. Plaintiff contends the assignments to Wells Fargo were void because each assignment (1) was made more than three months after the closing date established by the trust's pooling and servicing agreement and (2) failed to comply with the signature requirements of Civil Code section 1095.[1] The trial court rejected both theories. It concluded a transfer into a securitized trust more than three months after its closing date is merely voidable, not void in the strict sense. It also concluded an assignment of a deed of trust does not "transfer[] an estate in real property" (§ 1095) and, therefore, that provision's signature requirements for an attorney in fact do not apply to the challenged assignments.

The theory that a postclosing date transfer into a securitized trust is void is based on McKinney's Consolidated Laws of New York Annotated: Estates, Powers and Trusts Law (Estates, Powers and Trusts) section 7-2.4, which provides that a transaction in contravention of the trust's instrument—there, the securitized trust's pooling and servicing agreements—"is void." New York's highest court has not addressed this question of statutory interpretation. Based on our independent application of the basic principles of statutory construction employed by New York's highest court, it is probable that court will conclude Estates, Powers and Trusts section 7-2.4 is ambiguous and will resolve that ambiguity by concluding that, as to third parties, a postclosing date transfer into a securitized trust is merely voidable, not void in the strict sense. This approach is analytically different from that adopted by New York's intermediate appellate courts, but the outcome is the same—namely, plaintiff has not stated a cause of action based on the legal theory that the postclosing date transfers to the securitized trusts were void.

In addition, the trial court properly interpreted section 1095 and California property law when it concluded the assignments of the deeds of trust did not transfer an

---

[1]     Undesignated statutory references are to the Civil Code.

estate in real property and, therefore, the assignments were not subject to section 1095's requirements. Consequently, plaintiff's theory that the assignments were void for failing to comply with section 1095 does not state a cause of action under California law. As a result, the trial court properly sustained Wells Fargo's demurrer without leave to amend.

We therefore affirm the order of dismissal.

**BACKGROUND**

Before describing the facts and procedural history of this case, we provide an overview of the legal principles that define the type of wrongful foreclosure claims alleged by plaintiff and establish plaintiff's standing to pursue such claims.

*Types of Wrongful Foreclosure Claims*

The label "wrongful foreclosure" covers a variety of legal theories asserting a foreclosure is illegal. (See *Glaski v. Bank of America* (2013) 218 Cal.App.4th 1079, 1100, fn. 17 [claims a foreclosure is " 'wrongful' " can be based on tort, statute or contract] (*Glaski*).) One category of wrongful foreclosure involves allegations of procedural irregularities (i.e., defects) in the foreclosure process. (E.g., *Knapp v. Doherty* (2004) 123 Cal.App.4th 76, 81, 92–94 [procedural irregularity alleged was the premature service of the notice of trustee's sale]; see *Lona v. Citibank, N.A.* (2011) 202 Cal.App.4th 89, 104 [wrongfulness element satisfied by "the trustee's or the beneficiary's failure to comply with the statutory procedural requirements for the notice or conduct of the sale"].)

Another category contains claims alleging the nonjudicial foreclosure was "initiated by one with no authority to do so." (*Yvanova v. New Century Mortgage Corp.* (2016) 62 Cal.4th 919, 929 (*Yvanova*).) "[S]uch an unauthorized sale constitutes a wrongful foreclosure." (*Id*. at p. 935.) Under California law, "only the original beneficiary, its assignee or an agent of one of these has the authority to instruct the trustee to initiate and complete a nonjudicial foreclosure sale." (*Id.* at p. 929; see § 2924, subd. (a)(6).) Consequently, nonjudicial foreclosure sales initiated by parties claiming to

3.

be an assignee of the original beneficiary named in the deed of trust have been challenged by borrowers alleging an assignment in the purported chain of ownership was invalid. (See *Sciarratta v. U.S. Bank National Assn.* (2016) 247 Cal.App.4th 552, 564 [assignment to Bank of America, the foreclosing entity, was void because the note and deed of trust had been assigned to another entity months earlier].)

Here, plaintiff contends its "five causes of action are based principally upon two legal theories." As described below, each theory alleges the foreclosure was wrongful because a void assignment prevented Wells Fargo from having the authority to initiate the foreclosure.

*Standing—Unauthorized Foreclosures*

In *Yvanova*, *supra*, 62 Cal.4th 919, the Supreme Court addressed the narrow question of "[w]hether the borrower on a home loan secured by a deed of trust may base an action for wrongful foreclosure on allegations a purported assignment of the note and deed of trust to the foreclosing party bore defects rendering the assignment void." (*Yvanova*, *supra*, at p. 923.) The court concluded, "a borrower who has suffered a nonjudicial foreclosure does not lack standing to sue for wrongful foreclosure based on an allegedly *void* assignment merely because he or she was in default on the loan and was not a party to the challenged assignment." (*Id*. at p. 924, italics added.)

For purposes of this appeal, a critical aspect of *Yvanova*'s holding is the distinction between void and voidable transfers. (See generally, Black's Law Dict. (12th ed. 2024) p. 1891 ["distinction between *void* and *voidable* is often of great practical importance"].) The Supreme Court explained that a void contract is without legal effect, binds no one, and is a mere nullity. (*Yvanova*, *supra*, 62 Cal.4th at p. 929.) In contrast, a voidable transaction " 'is one where one or more parties have the power, by a manifestation of election to do so, to avoid the legal relations created by the contract, or by ratification of the contract to extinguish the power of avoidance.' " (*Id*. at p. 930.) Thus, a voidable transaction "may be declared void but is not void in itself." (*Ibid*.) Under the principles

4.

set forth in *Yvanova*, defects that render an assignment of a mortgage loan[2] merely voidable cannot be the basis of a wrongful foreclosure cause of action.

Consequently, this case, like many post-*Yvanova* decisions involving securitized trusts, addresses whether the plaintiff presented a legal theory, supported by factual allegations, that would render an assignment of the mortgage loan in the securitized trust's chain of ownership void in the strict sense of the word, rather than merely voidable. (E.g., *Hacker v. Homeward Residential, Inc.* (2018) 26 Cal.App.5th 270, 281 [plaintiff "successfully alleged facts supporting a claim that the August 21, 2008 assignment is void" due to an earlier assignment that left the original lender with nothing to assign on August 21st]; *Yhudai v. IMPAC Funding Corp.* (2016) 1 Cal.App.5th 1252, 1256 ["assignment that is merely *voidable*, by contrast, does not support a wrongful foreclosure action"]; *Sciarratta v. U.S. Bank National Assn.*, *supra*, 247 Cal.App.4th at p. 564.)

### Glaski and New York Law

The parties and the trial court have referred to one of plaintiff's theories that the assignments of the mortgage loans were void as the "*Glaski* theory." This court decided *Glaski* about two and a half years before *Yvanova*. We concluded a borrower could challenge an assignment of his mortgage loan "if the defect asserted would *void* the assignment." (*Glaski, supra,* 218 Cal.App.4th at p. 1095; see *Yvanova*, *supra*, 62 Cal.4th at p. 939 ["embracing *Glaski*'s rule that borrowers have standing to challenge assignments as void, but not as voidable"].) As a result, we proceeded "to the question whether Glaski's allegations have presented a theory under which the challenged assignments are void, not merely voidable." (*Glaski*, *supra*, at p. 1095.)

---

**2** For convenience, we refer to the combination of a promissory note and the deed of trust securing the note as the "mortgage loan."

Glaski alleged (1) the attempt to transfer his mortgage loan to the securitized trust occurred after the closing date established by the trust's pooling and servicing agreement, (2) the trust was formed under New York law, and (3) the trust was subject to the requirements imposed on a "Real Estate Mortgage Investment Conduit" (REMIC) by the Internal Revenue Code (26 U.S.C. §§ 860A–860G). (*Glaski*, *supra*, 218 Cal.App.4th at pp. 1095–1096.) Based on the allegation that the securitized trust was formed under New York law, we concluded the operation of the trust could be governed by New York law—particularly, Estates, Powers and Trusts section 7-2.4. (*Glaski*, *supra*, at p. 1096.) That statute "provides: 'If the trust is expressed in an instrument creating the estate of the trustee, every sale, conveyance or other act of the trustee in contravention of the trust, except as authorized by this article and by any other provision of law, is void.' " (*Ibid.*, fn. omitted.) We concluded "this statutory provision provides a legal basis for concluding that the trustee's attempt to accept a loan after the closing date would be void as an act in contravention of the trust document." (*Ibid.*) We determined that adopting the strict meaning of the word "void" was justified under the allegations presented because it protected the beneficiaries of the securitized trust "from the potential adverse tax consequence of the trust losing its status as a REMIC trust under the Internal Revenue Code." (*Id.*, at p. 1097.)

Our interpretation of the New York statute relied on the only decision by a New York court addressing the validity of an attempt to transfer a mortgage loan to a securitized trust after the trust's closing date: " 'Under New York Trust Law, every sale, conveyance or other act of the trustee in contravention of the trust is void. [Estates, Powers and Trust] § 7–2.4. Therefore, the acceptance of the note and mortgage by the trustee after the date the trust closed, would be void.' (*Wells Fargo Bank, N.A. v. Erobobo* (N.Y.Sup.Ct. 2013) 39 Misc.3d 1220(A) ….)." (*Glaski*, *supra*, 218 Cal.App.4th at p. 1097.)

6.

To summarize, the "*Glaski* theory" is based on an interpretation of a New York statute and refers to plaintiff's allegation that attempts to assign the mortgage loans to securitized trusts were void because the transfers were attempted more than three months after the closing date established by the trust's governing pooling and servicing agreement. (See *Glaski*, *supra*, 218 Cal.App.4th at pp. 1095–1098 [part III.D., "*Voidness of a Postclosing Date Transfer to a Securitized Trust*"].)

The interpretation of New York law adopted in *Glaski* has been rejected by many other courts, including other districts of the Court of Appeal. (E.g., *Kalnoki v. First American Trustee Servicing Solutions, LLC* (2017) 8 Cal.App.5th 23, 42-43 [Third Dist.]; *Saterbak v. JPMorgan Chase Bank, N.A.* (2016) 245 Cal.App.4th 808, 815 [Fourth Dist.].) Consequently, a significant legal question presented in this appeal is whether we should adhere to *Glaski*'s interpretation of Estates, Powers and Trusts section 7-2.4 or reject that interpretation and join other courts in concluding the term "is void" means merely voidable.

## FACTS AND PROCEEDINGS

*Plaintiff, Its Officers and Owner*

Plaintiff Not Too Big To Fall Association, Inc. was incorporated as a California corporation on December 31, 2015—one year and five months after *Glaski*, *supra*, 218 Cal.App.4th 1079 was filed.[3] Nigel Johnson is its chief executive officer, chief financial officer, and sole director; Raquel Chavez is its secretary; and Behrouz Beck Saffary is its agent for service of process. The address of the corporation and its officers is on Mission View Drive in Fremont, California. The foregoing information about plaintiff's officers and address was taken from the statement of information plaintiff filed with the

---

[3] On August 8, 2013, we certified *Glaski* for publication. On August 29, 2013, we denied the respondents' petition for rehearing. The respondents did not file a petition for review with the Supreme Court. On October 8, 2013, remittitur was issued. In February 2014, the Supreme Court denied over 20 requests to depublish *Glaski*.

7.

California Secretary of State in April 2026. (See Corp. Code, § 1502 [requirements for filing a statement of information].)

Plaintiff has been represented in the trial court and on appeal by Attorney Brian J. Jacobs. Declarations filed by Attorney Jacobs with this court refer to (1) plaintiff's chief executive officer as "Rev. Dr. Nigel L. Johnson, D.D." and (2) Larry Brown as "the owner of Plaintiff" and "my contact person for Plaintiff." Despite declaring under penalty of perjury that Larry Brown was "the owner of Plaintiff," Attorney Jacobs filed a supplemental certificate of interested entities or parties (Judicial Council Forms, form APP-008) in which he certified that there were no interested persons that must be listed under California Rules of Court, rule 8.208. Persons who must be listed include anyone with "an ownership interest of 10 percent or more in the party." (Cal. Rules of Court, rule 8.208(e)(1).)

*Larry Brown and His Lawsuits*

Larry Brown is mentioned here because he was the plaintiff in similar federal court actions and lawsuits filed in Fresno County Superior Court. (*Brown v. Superior Court* (2018) 19 Cal.App.5th 1208, 1216 [history of the federal lawsuits]; see *Brown v. Bank of America, N.A.* (9th Cir. 2016) 660 Fed.Appx. 506 [affirming dismissal of RICO claims].) The two Fresno lawsuits were filed in 2015 and 2016 and assigned case Nos. 15CECG01171 and 16CECG02223. Brown was represented by Attorney Jacobs in those matters.

The 2015 action asserted causes of action relating to defaulted home loans of 1,117 borrowers who had assigned those claims to Life Savers Concepts Association, Inc.

(Life Savers)**4** which subsequently assigned them to Brown.  (*Brown v. Superior Court*, *supra*, 19 Cal.App.5th at pp. 1210, 1212–1213; *Life Savers Concepts Association of California v. Wynar* (N.D.Cal. 2019) 387 F.Supp.3d 989, 993.)  In the 2016 action, Brown alleged he had been assigned similar claims by approximately 20,000 California residents.  In October 2019, the trial court dismissed the 2015 and 2016 actions after finding that the borrower-assignors were necessary and indispensable parties and their joinder would not be feasible.  We affirmed the judgment of dismissal.  (*Brown v. Bank of America, N.A.* (June 9, 2023, F080566) [nonpub. opn.].)

Borrower Assignments

This action involves assignments that plaintiff obtained from approximately 10,000 borrowers who were facing, or had been subjected to, foreclosure.  The agreements were made with the intention that plaintiff would litigate the borrowers' claims against the financial institutions and other parties involved in the foreclosures.  To document the transfer, the borrowers signed an assignment agreement, an appended membership agreement, and a quitclaim deed.  Plaintiff asserts these documents total approximately 27,000 pages.

The membership agreements describe plaintiff as an association "of homeowners … organized to challenge the validity, authority, and enforceability of their current

---

**4**　　Nigel Johnson founded Life Savers, a North Carolina corporation, in July 2012 and served as its president.  (*Brown v. Superior Court*, *supra*, 19 Cal.App.5th at p. 1212; *Chavez v. Wynar* (N.D.Cal. 2019) 421 F.Supp.3d 891, 894.)  Before joining a Stockton-based, nondenominational ministry named Lifehouse International Ministries, Johnson was "a real estate agent, and many of his clients were facing foreclosure."  (*Brown v. Superior Court*, *supra*, at p. 1212.)  The membership agreements Life Savers entered into with homeowners and former homeowners are described in *Brown v. Superior Court*, *supra*, at page 1212.  "The purpose of Life Savers was to assist low-income homeowners throughout Northern California combat foreclosures during the financial crisis."  (*Chavez v. Wynar*, *supra*, at p. 894.)  In 2019, a federal district court stated:  "The Office of the Monterey County District Attorney and the FBI have investigated Life Savers for fraud since at least 2014."  (*Ibid*.)

9.

Promissory Note and Deed of Trust allegedly owned by entities memorialized in the said documents." The assignment agreements (1) refer to the borrowers as the assignor and a member of plaintiff and (2) state that the borrower "transfers all his/her/their rights and interest of legal claims and property rights as described in the recitals to this Agreement to [plaintiff], and the [plaintiff] hereby accepts such transfer." The assignments covered 10,016 properties. The borrowers agreed to pay plaintiff membership dues of $1,000 per property and administrative fees of $450. They also agreed plaintiff would receive 30 percent of the proceeds recovered, if any. The quitclaim deeds stated the borrowers "hereby remise, release and forever quitclaim to [plaintiff a] 5% ownership interest in the … real property" described in the deed.

*This Lawsuit*

Plaintiff filed this action in Fresno County Superior Court on November 12, 2019—a little over a month after the judgment of dismissal had been filed in Brown's 2015 and 2016 lawsuits. The complaint named Wells Fargo Bank, N.A. and several other entities as defendants, including Mortgage Electronic Registrations Systems, Inc. (MERS) and Merscorp Holdings, Inc. (Merscorp). MERS is a wholly owned subsidiary of Merscorp; both are Delaware corporations.

In January 2023, plaintiff filed the operative first amended complaint (FAC) with claims labeled (1) wrongful foreclosure, (2) conversion, (3) intentional interference with contract, (4) violation of the Homeowner Bill of Rights, and (5) accounting. An 88-page table attached to the FAC identified the 10,016 properties for which these claims were asserted. The table listed the names of the borrowers who had assigned their claims; the address and assessor's parcel number of the property foreclosed upon; the foreclosure date; the loan amount; the bank initiating the foreclosure; and the financial institution purportedly holding a deed of trust on the property.

The FAC alleged each borrower's deed of trust had purportedly been transferred to the trustee of a securitized trust organized under either New York or Delaware law and

10.

the securitized trusts issued mortgage-backed investment securities (usually referred to as certificates) that were duly registered with the Securities and Exchange Commission (SEC). The process used to create mortgage-backed securities is known as "securitization." (*Glaski*, *supra*, 218 Cal.App.4th at p. 1082, fn. 1.) That process involves many loans being bundled together and transferred to a passive entity such as a trust, with that entity holding the loans and issuing investment securities. Holders of the securities receive their proportionate share of the payments made on the loans. (*Ibid*.)

The FAC alleged that a crucial aspect of the securitization process was the qualification of the securitized trusts as a REMIC under the Internal Revenue Code. (26 U.S.C. §§ 860A–860G.) A REMIC is a pass-through entity for purposes of federal income tax, meaning the taxable income generated by the repayment of the loans is reported by the certificate holders, not the REMIC. The FAC alleged that each securitized trust is governed by a trust instrument called a pooling and servicing agreement, which has been filed with the SEC and is a matter of public record.

Federal tax law provides that a REMIC must have a closing date and any contribution to the securitized trust not made either by the closing date or within the ensuing three-month period will be subject to a tax "equal to 100 percent of the amount of such contribution." (26 U.S.C. § 860G(d)(1).) The FAC alleged that the assignment of each borrower's mortgage loan to a securitized trust was more than three months after the closing date of the trust, which violated the trust's pooling and servicing agreement. Plaintiff contends that, because none of the assignments of the mortgage loans were made within the period specified in the applicable pooling and servicing agreement, no legal transfer of any interest in those mortgage loans ever occurred and the trustees of the securitized trusts lacked the power to accept the assignments. Plaintiff further contends that, because the securitized trusts' trustees could not be the beneficiaries under the borrowers' deeds of trust, each foreclosure sale of a property owned by a borrower is void.

11.

We note the FAC does not allege that any of the securitized trusts had filed a document with the SEC disclosing the trust (1) lost its status as a flow-through entity as a result of accepting untimely transfers of mortgage loans or (2) is paying federal income tax on unqualified assets. Also, the parties have not requested we take judicial notice of any such document.

Another legal theory in the FAC was based on California law and directed at the ability of MERS to validly assign the mortgage loans. The FAC alleged (1) MERS was not properly empowered to transfer the promissory notes and, as a result, all the assignments of deeds of trust executed by MERS were ineffective; (2) MERS, as the designated nominee of the lender of each deed of trust was an attorney in fact of the lender and, in transferring an estate to the trustee of a securitized trust, failed to comply with section 1095's requirement that it "subscribe the name of [its] principal" to assignment; and (3) the defective transfers could not be ratified under section 2313 because MERS's original grant of authority did not designate the affected properties. The FAC asserted every conveyance executed by MERS in California was, "in respect of Plaintiff, void."

The FAC's prayer for relief sought general damages in excess of $6.4 billion for the wrongful foreclosure claims and in excess of $800 million for the conversion claims.

*The Demurrer*

In February 2023, Wells Fargo filed a demurrer with a supporting request for judicial notice of documents showing the Franchise Tax Board had suspended plaintiff's corporate powers in 2019. The demurrer asserted (1) plaintiff lacked the capacity to sue because of the suspension; (2) the causes of action were barred by the applicable statutes of limitation, the longest of which is three years; and (3) the FAC failed to state facts sufficient to constitute a cause of action—that is, plaintiff's theories that transfers of the mortgage loans to the securitized trusts were void were legally flawed and did not support

12.

any viable claim. In May 2023, plaintiff filed an opposition and a request for judicial notice of documents showing its corporate powers had been restored that month.

In September 2023, following a tentative ruling, the demurrer was argued and submitted. The trial court issued a minute order adopting its tentative ruling and sustaining Wells Fargo's demurrer without leave to amend. The court rejected the "*Glaski* theory," which holds that, under New York Law, attempts to assign mortgage loans to securitized trusts are void when the transfer was attempted more than three months after the closing date established by the trust's governing pooling and servicing agreement. (See *Glaski*, *supra*, 218 Cal.App.4th at pp. 1095–1098 ["*Voidness of a Postclosing Date Transfer to a Securitized Trust*"].) The court also rejected the theory that attempts by MERS to transfer the deeds of trust were invalid under California law based on its legal conclusion that transfers of deeds of trust are not subject to section 1095.

## Dismissal Order and Appeal

Two weeks later, Wells Fargo made an ex parte application for an order of dismissal as to all claims against it. The trial court granted the application. On December 14, 2023, the trial court signed and filed an order stating the claims against Wells Fargo were dismissed in their entirety with prejudice.

In April 2024, plaintiff filed a motion for new trial, asserting the trial court's decision was against law and prevented it from having a fair trial. On June 11, 2024, two days before the hearing on the motion for new trial, plaintiff filed a notice of appeal from the order of dismissal. At the hearing, the court took the matter under advisement, and, several days later, issued an order denying plaintiff's motion for new trial.

## Proceedings on Appeal

After plaintiff filed its reply brief, this court advised the parties of its intent to dismiss the appeal on its own motion because plaintiff's corporate powers had been suspended by the Franchise Tax Board since December 2, 2024. Plaintiff responded to

13.

the motion stating it intended to obtain a certificate of revivor and it anticipated the certificate would be obtained in approximately 30 days. On January 29, 2026, we filed an order noting that over 37 days had passed since plaintiff's response and that the appellant in *Eminence Healthcare, Inc. v. Centuri Health Ventures, LLC* (2022) 74 Cal.App.5th 869 had been able to obtain a certificate of revivor within 16 days of our order notifying counsel of the suspension. In *Eminence Healthcare*, the appellant used the walk-through procedure (form FTB 3557 W PC) and a Sacramento-based firm that specialized in obtaining such certificates. In this matter, plaintiff eventually paid its delinquent taxes and obtained a certificate of revivor. The Secretary of State restored plaintiff's corporate powers on April 2, 2026.

In May 2026, this court granted Wells Fargo's request to file a supplemental brief addressing questions about how New York's highest court would apply its traditional framework for statutory construction to determine the meaning of Estates, Powers and Trusts section 7-2.4. Our order directed Wells Fargo to address (1) whether the statutory term "void" was ambiguous in the abstract; (2) whether it was ambiguous in its statutory context; (3) whether the purpose of Estates, Powers and Trusts section 7-2.4 was to protect trust beneficiaries from unauthorized actions by the trustee; and (4) which interpretation best promoted the statute's purpose.

Before Wells Fargo submitted its supplemental brief responding to those specific questions, plaintiff filed a motion for leave to file a supplement reply brief. We granted that motion but limited the reply to the specific issues identified in our May 2026 order. After the parties filed their supplemental briefs, we deemed the case fully briefed and set oral argument for July 22, 2026.

## DISCUSSION

The parties agree that appellate courts conduct a de novo review of an order sustaining a demurrer. In addition, they do not dispute the basic legal principles applied by an appellate court when deciding whether the complaint "state[s] facts sufficient to

14.

constitute a cause of action." (Code Civ. Proc., § 430.10, subd. (e).) Because those principles are set forth in many decisions of the California Supreme Court and are not the subject of a dispute, they are not repeated here. (See e.g., *City of Dinuba v. County of Tulare* (2007) 41 Cal.4th 859, 865; *Aubry v. Tri–City Hospital Dist.* (1992) 2 Cal.4th 962, 966–967.)

I.      WRONGFUL FORECLOSURE DUE TO A VOID ASSIGNMENT

A.      The New York Statute

Plaintiff's "*Glaksi* theory" asserts the assignments of the mortgage loans to Wells Fargo the trustee of securitized trusts were *void* because (1) the assignments were attempted more than three months after the closing date in the trusts' pooling and servicing agreements; (2) the pooling and servicing agreements for the securitized trusts, in accordance with federal tax law, required the assignments to be made within that timeframe; (3) the tardy attempted assignments violated the trusts' pooling and servicing agreements; and (4) any act in contravention of the trusts' pooling and servicing agreements is void under the law that governs the securitized trusts. The governing law discussed in *Glaski* and relied upon by plaintiff is Estates, Powers and Trusts section 7-2.4, which provides in full:

> "If the trust is expressed in an instrument creating the estate of the trustee, every sale, conveyance or other act of the trustee in contravention of the trust, except as authorized by this article and by any other provision of law, is *void*." (Italics added.)

"[T]his statutory provision provides a legal basis for concluding that the trustee's attempt to accept a loan after the closing date would be void as an act in contravention of the trust document." (*Glaski*, *supra*, 218 Cal.App.4th at p. 1096.)[5] Based on that view of

---

[5]      For historical purposes only, we note that Thomas Glaski's action returned to this court in 2017, after the trial court granted the defendants' motion for summary judgment (case No. F075255). Before the summary judgment motion was filed, Glaski amended his pleading to allege the securitized trust and its pooling and servicing agreement were governed by Delaware law rather than New York law. Thus, our 2013 interpretation of

15.

New York law, we concluded the plaintiff's allegations of postclosing date attempts to transfer his deed of trust to a securitized trust stated a legal theory under which the attempted transfers were void and, thus, the foreclosure was wrongful. (*Glaski*, *supra*, at p. 1097.)

Wells Fargo contends we should revisit *Glaski*'s interpretation of Estates, Powers and Trusts section 7-2.4 and follow the post-*Glaski* decisions of New York courts that conclude ultra vires transfers are merely voidable, not void in the strict sense. That interpretation of New York law has been adopted by the Second, Ninth, and other circuits of the United States Court of Appeals, every published decision of the California Court of Appeal after *Yvanova*, and the courts of several other states.[6]

### 1. Erobobo

As described earlier, the July 2013 decision in *Glaski* relied on the only decision by a New York court addressing the validity of an attempt to transfer a mortgage loan to

---

New York law in *Glaski* was no longer relevant to that lawsuit. The appeal in case No. F075255 was dismissed after the parties settled.

[6] The federal decisions include *Rajamin v. Deutsche Bank Nat. Trust Co.* (2d Cir. 2014) 757 F.3d 79, 88 (*Rajamin*); *Turner v. Wells Fargo Bank NA* (9th Cir. 2017) 859 F.3d 1145, 1149; *In re Jepson* (7th Cir. 2016) 816 F.3d 942, 947; and *Ferguson v. Bank of New York Mellon Corp.* (5th Cir. 2015) 802 F.3d 777, 782–783.

The California Court of Appeal decisions include *Kalnoki v. First American Trustee Servicing Solutions, LLC*, *supra*, 8 Cal.App.5th at pages 42–43 (Third Dist.); *Mendoza v. JPMorgan Chase Bank, N.A.* (2016) 6 Cal.App.5th 802, 811–817 (Third Dist.) (*Mendoza*); *Yhudai v. IMPAC Funding Corp.*, *supra*, 1 Cal.App.5th at pages 1256–1259 (Second Dist.); and *Saterbak v. JPMorgan Chase Bank, N.A.*, *supra*, 245 Cal.App.4th at page 815 (Fourth Dist.).

Decisions from other states include *Pike v. Deutsche Bank National Trust Company* (2015) 168 N.H. 40, 45, [121 A.3d 279]; *Deutsche Bank National Trust Company v. Maclaurin* (N.M.App. 2015) 350 P.3d 1201, 1205; *Wood v. Germann* (2014) 130 Nev. 553 [331 P.3d 859, 861]; *U.S. Bank National Assn. v. Salvacion* (2014) 134 Haw. 170, 175 [338 P.3d 1185]; *Dernier v. Mortgage Network, Inc.* (Vt. 2013) 87 A.3d 465, 474–475; and *Bank of America National Assn. v. Bassman FBT, LLC* (Ill. App. 2012) 981 N.E.2d 1, 13.

a securitized trust after the trust's closing date—an April 29, 2013 decision of the Supreme Court of Kings County, a trial court. (*Wells Fargo Bank, N.A. v. Erobobo* (N.Y.Sup.Ct. 2013) 39 Misc.3d 1220(A) [972 N.Y.S.2d 147] (*Erobobo I*) [judicial foreclosure action]; see *Glaski*, *supra*, 218 Cal.App.4th at p. 1097.) In *Erobobo I*, the court applied Estates, Powers and Trusts section 7-2.4 and concluded the acceptance of the note and mortgage by the trustee after the securitized trust's closing date was void. (*Erobobo I*, *supra*, 972 N.Y.S.2d 147.) Based on its interpretation of Estates, Powers and Trusts section 7-2.4, the court in *Erobobo I* denied Wells Fargo's motion for summary judgment.[7]

Wells Fargo appealed *Erobobo I*. (*Wells Fargo Bank, N.A. v. Erobobo* (2015) 127 A.D.3d 1176 [9 N.Y.S.3d 312] (*Erobobo II*).) In April 2015, a New York intermediate appellate court published a decision concluding (1) Wells Fargo had established its prima facie entitlement to summary judgment on its claim for judicial foreclosure by producing the mortgage, the unpaid note, and evidence of Erobobo's default; (2) Erobobo failed to raise a triable issue of fact; and (3) the trial court should have granted the motion for summary judgment. (*Id*. at p. 314.) The appellate court provided two grounds for rejecting the trial court's determination that the assignment to the trustee of the securitized trust was void. First, Erobobo's answer did not assert the defense that the trustee, Wells Fargo, lacked standing to bring a judicial foreclosure action and, therefore, Erobobo waived that defense. (*Ibid*.) Second, on the issue relevant to the present appeal, the court concluded the defense lacked merit because "Erobobo, as a mortgagor whose loan is owned by a trust, does not have standing to challenge the plaintiff's possession or

---

[7] Over a year later, the Supreme Court of Suffolk County stated: "For well over one hundred years, it has been the law in New York that where the transfer of a mortgage to a third party is effectuated in a manner that contravenes the express terms of a governing trust, the transfer is *ultra vires* and is void." (*Aurora Loan Servs. LLC v. Scheller* (N.Y.Sup.Ct. 2014) 43 Misc.3d 1226(A) [992 N.Y.S.2d 157] (*Aurora*).) The court did not cite either *Erobobo I* or *Glaski*.

17.

status as assignee of the note and mortgage based on purported noncompliance with certain provisions of the [pooling and servicing agreement] (*see Bank of N.Y. Mellon v Gales*, 116 AD3d 723, 725 [2014]; *Rajamin*[, *supra*] 757 [F.3d] 79, 86–87 [2d Cir 2014]).” (*Ibid.*)

The appellate court's analysis did not mention Estates, Powers and Trusts section 7-2.4 or the term “void.” (*Erobobo II, supra*, 9 N.Y.S.3d at p. 314.) However, when read in context, its rationale implies the borrower could not challenge the assignment of the mortgage loan to the securitized trust because the statute holds such an assignment merely voidable, not void. In short, the appellate court impliedly interpreted the statutory term “void” to mean “voidable.” This implication is derived from the court's citation to *Rajamin*, where the Second Circuit explicitly addressed Estates, Powers and Trusts section 7-2.4 and the plaintiff's contention that the failure to comply with the terms of a pooling and servicing agreement rendered the defendants' acquisition of the plaintiff's mortgage loan void as a matter of New York trust law. (*Rajamin, supra*, 757 F.3d at pp. 87–88.) The Second Circuit referred to the general principle of New York law that a void act is not subject to ratification and the specific principle of New York trust law that a “trust's beneficiaries may ratify the trustee's otherwise unauthorized act.” (*Id*. at p. 89.) From those principles, the Second Circuit deduced that “an unauthorized act by the trustee is not void but merely voidable by the beneficiary.”[8] (*Ibid*.) Based on the explicit analysis of Estates, Powers and Trusts section 7-2.4 in *Rajamin*, it is reasonable to

---

[8]    In using the word “unauthorized,” it appears that, for purposes of ratification, the Second Circuit treated acts by the trustee that were not expressly or implied authorized by the trust instrument the same as acts that were *expressly prohibited* by that instrument. The possibility of distinguishing acts that are not authorized from acts that are expressly prohibited, raises the question whether Estates, Powers and Trusts section 7-2.4's phrase “in contravention of the trust” was intended to cover only acts expressly prohibited by the trust instrument.

interpret *Erobobo II* as adopting the same statutory construction—that is, "void" means merely voidable and not void in its strict sense.

*Erobobo II*'s reversal of *Erobobo I* became final after the New York Court of Appeals, the state's highest court, dismissed a motion for leave to appeal in August 2015. (*Wells Fargo Bank, N.A. v. Erobobo* (2015) 25 N.Y.3d 1221.)

  2.  *Other New York Decisions*

In addition to *Erobobo II*, several other decisions of New York's intermediate appellate court have addressed whether a borrower can challenge an assignment of a mortgage loan to the trustee of a securitized trust based on a failure to comply with a requirement of the trust's pooling and servicing agreement. Those decisions reach the same result as *Erobobo II* and, like that decision, usually state their legal conclusion in terms of the borrower's lack of standing without explicitly mentioning the void-voidable distinction.

For example, in *Wells Fargo Bank, N.A. v. Tricario* (2020) 180 A.D.3d 848 [119 N.Y.S.3d 139] the court stated that, " '[a]s a mortgagor whose loan is owned by a trust, the appellant does not have standing to challenge the plaintiff's possession or status as assignee of the note and mortgage based on purported noncompliance with certain provisions of the relevant pooling and servicing agreement.' " (*Tricario*, *supra*, 119 N.Y.S.3d at p. 142, quoting *U.S. Bank N.A. v. Saravanan* (2017) 146 A.D.3d 1010, 1012, [45 N.Y.S.3d 547]; accord, *Wells Fargo Bank, N.A. v. Archibald* (2017) 150 A.D.3d 935, 936–937 [55 N.Y.S.3d 116]; *U.S. Bank N.A. v. Carnivale* (2016) 138 A.D.3d 1220, 1222 [29 N.Y.S.3d 643]; *Bank of N.Y. Mellon v. McClintock* (2016) 138 A.D.3d 1372, 1377 [31 N.Y.S.3d 252]; *Bank of America N.A. v. Patino* (2015) 128 A.D.3d 994, 994–995 [9 N.Y.S.3d 656]; *Bank of N.Y. Mellon v. Gales* (2014) 116 A.D.3d 723, 725 [982 N.Y.S.2d 911] [borrowers "did not have standing to assert noncompliance with the subject lender's pooling service agreement"]; see also, *Wells Fargo Bank, N.A. v. Charlaff* (2015) 134

A.D.3d 1099, 1100 [24 N.Y.S.3d 317] [no merit to borrowers' contention that they were third-party beneficiaries under the pooling and servicing agreement].) As we explained above, the conclusion phrased in terms of the borrower's standing can be construed as the equivalent stating that, for purposes of Estates, Powers and Trusts section 7-2.4, a transfer of a mortgage loan to the trustee of a securitized trust in violation of the terms of the pooling and servicing agreement is voidable, not void in the strict sense. When the transfer is viewed as merely voidable, the borrower, as a third party to the transfer, cannot challenge its validity. (See *Rajamin*, *supra*, 757 F.3d at p. 90; *Yvanova*, *supra*, 62 Cal.4th at p. 939 ["borrowers have standing to challenge assignments as void, but not as voidable"].)

Some decisions of New York *trial* courts, in contrast to the appellate decisions, explicitly address Estates, Powers and Trusts section 7-2.4 and whether the assignment of the mortgage loan to the trustee of the securitized trust is void. This explicit discussion confirms what the appellate decisions imply. For instance, the Supreme Court of Richmond County stated:

> "Even assuming arguendo that the mortgage was assigned in a manner inconsistent with the [pooling and servicing agreement], such a defect would not render the assignment *void ab initio.* Rather, under New York law, an act performed by a trustee in contravention of trust terms is voidable at the instance of a party to the trust, not by an unrelated third party. (*see Rajamin*[, *supra*,] 757 F3d 79, 90 [2d Cir 2014]) ('[F]ailures to comply with the terms of a PSA are voidable, not void'); [citation]).

> "Plaintiff's reliance on *EPTL § 7-2.4* is misplaced. That statute renders acts of a trustee 'in contravention of the trust' void as to the interests of the trust or its beneficiaries, not third parties. The interpretive gloss applied by both federal and state courts makes clear that a borrower cannot wield this provision as a sword to nullify assignments on the basis of alleged violations of securitization protocols." (*Andersen v. Bank of New York Mellon* (2025) 86 Misc. 3d 1264(A) [238 N.Y.S.3d 408] at p. *11].)

Similarly, the Supreme Court of Albany County rejected the borrower's argument that the trustee of a securitized trust lacked standing to commence a judicial foreclosure

20.

"action because the note and mortgage were transferred into the [securitized t]rust in violation of the pooling service agreement and/or Estates, Powers and Trusts Law § 7-2.4." (*U.S. Bank N.A. v. McMullin* (2017) 55 Misc.3d 1053, 1057 [47 N.Y.S.3d 882].)

### 3. Our Independent Interpretation of Estates, Powers and Trusts Section 7-2.4

Having described how New York's intermediate appellate courts and trial courts have addressed the legal theory that a violation of a securitized trust's pooling and servicing agreement renders the assignment of the borrower's mortgage loan void, we consider whether we should simply follow their interpretation of New York law or, alternatively, conduct an independent analysis.

Our resolution of this question is guided by the general principle that "a State's highest court is the final judicial arbiter of the meaning of state statutes." (*Gurley v. Rhoden* (1975) 421 U.S. 200, 208 [95 S.Ct. 1605, 44 L.Ed.2d 110].) Recognizing this principle, California courts usually give great deference to a definitive construction of another state's statute by that state's highest court. (*Hughes Electronics Corp. v. Citibank Delaware* (2004) 120 Cal.App.4th 251, 264–265.) Here, the New York Court of Appeals has not addressed whether a transfer of a mortgage loan to a trustee of a securitized trust in violation for the trust's pooling and servicing agreement is void or merely voidable. If it had, we would apply that statutory interpretation because the New York Court of Appeals "is the court of last resort from which no appeal lies on questions of New York law (*see,* NY Const, art VI, §§ 2, 3)." (*New York State Assn. of Criminal Defense Lawyers v. Kaye* (2000) 95 N.Y.2d 556, 560 [744 N.E.2d 123].)[9]

---

[9] We also would apply an interpretation adopted by the California Supreme Court on this point of New York law. (See *Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.) However, our Supreme Court has expressed no opinion on "whether a postclosing date transfer into a New York securitized trust is void or merely voidable." (*Yvanova*, *supra*, 62 Cal.4th at p. 931.)

Lacking a definitive construction of Estates, Powers and Trusts section 7-2.4 by New York's highest court, we adopt the approach of certain federal decisions that attempt "to 'carefully predict how the highest court of the state would resolve the uncertainty or ambiguity' " in that statute. (*Sprint PCS L.P. v. Connecticut Siting Council* (2d Cir. 2000) 222 F.3d 113, 115–116.) We conclude the best way to make that prediction is to apply the basic principles of statutory construction used by the New York Court of Appeals. We independently apply those principles for two reasons. First, we have not located a decision by the lower New York courts that methodically applied the legal framework created by those principles. Second, as illustrated by the California Supreme Court's unanimous resolution of the standing question in *Yvanova*, a simple head count of how lower state courts and federal courts have ruled on a particular issue is not necessarily a reliable prediction of how a state's high court will resolve that issue.[10]

### 4. *New York's Approach to Statutory Construction*

Our consideration of the basic principle of statutory construction applied by the New York Court of Appeals begins by noting the New York Legislature has adopted many provisions addressing how its statutes should be construed. McKinney's Consolidated Laws of New York Annotated: General Construction Law (General Construction Law) sections 1 through 121 contain general rules applicable to the construction of statutes and contracts. In addition, McKinney's Consolidated Laws of New York Annotated: Statutes (NY Statutes) sections 1 through 424 address a variety of topics involving statutes, including their construction and interpretation. (NY Statutes,

---

[10] In *Yvanova*, the court (1) concluded *Glaski* correctly determined a borrower had standing to bring a wrongful foreclosure action alleging a void assignment precluded the foreclosing entity from having the authority to order a nonjudicial foreclosure sale (*Yvanova*, *supra*, 62 Cal.4th at p. 939); (2) disapproved four published opinions from other districts of the Court of Appeal holding borrowers lacked standing to challenge an assignment of the deed of trust as void (*id*. at p. 939, fn. 13); and (3) concluded several federal decisions that declined to follow *Glaski*'s standing determination lacked persuasive value (*id*. at p. 940).

§§ 71–262 [Chapter 6].) "The primary consideration of the courts in the construction of statutes is to ascertain and give effect to the intention of the Legislature." (NY Statutes, § 92.) "If the intent of the lawmaking body is not clear, the court in construing a statute will apply established rules or canons of construction, the purpose of such rules being to discover the true intention of the law." (NY Statutes, § 91.) "A basic consideration in the interpretation of a statute is the general spirit and purpose underlying its enactment, and that construction is to be preferred which furthers the object, spirit and purpose of the statute." (NY Statutes, § 96.)

The parties' appellate briefing does not refer to any provision of NY Statutes or General Construction Law. We note sections 10 through 62 of the General Construction Law defines many terms, but not "void," "law," and "provision of law." Those terms are used in Estates, Powers and Trusts section 7-2.4 and their meaning is disputed in this appeal.

The New York Court of Appeals has concluded, consistent with the directives for statutory interpretation enacted by the New York Legislature, that " '[w]hen presented with a question of statutory interpretation, our primary consideration is to ascertain and give effect to the intention of the Legislature.' " (*Samiento v. World Yacht Inc.* (2008) 10 N.Y.3d 70, 77–78 [883 N.E.2d 990], quoting *Matter of DaimlerChrysler Corp. v. Spitzer* (2006) 7 N.Y.3d 653, 660 [N.E.2d 705].) Because "the clearest indicator of legislative intent is the statutory text, the starting point in any case of interpretation must always be the language itself, giving effect to the plain meaning thereof." (*Majewski v. Broadalbin–Perth Cent. School Dist.* (1998) 91 N.Y.2d 577 [696 N.E.2d 978]; see *Matter of Avella v. City of New York* (2017) 29 N.Y.3d 425, 434 [80 N.E.3d 982].) Statutory text is not viewed in isolation. "A statute 'must be construed as a whole,' and 'its various sections must be considered together and with reference to each other.' " (*Matter of Peyton v. New York City Bd. of Stds. & Appeals* (2020) 36 N.Y.3d 271, 280 [164 N.E.3d 253].)

Where the statutory language is ambiguous or where a literal construction would lead to absurd or unreasonable consequences that are contrary to the statute's purpose, courts consider legislative history. A statute is ambiguous where its "language is susceptible of more than one reasonable interpretation." (*People v. Sprint Nextel Corp.* (2015) 26 N.Y.3d. 98, 119 [42 N.E.3d 655]; see NY Statutes, §§ 111 [departure from literal construction to sustain legislative intention], 120–130 [extrinsic aids to interpretation].)

### 5. The Use of "Void" Creates Ambiguity

In accordance with the foregoing principles, our briefing order directed the parties to address whether Estates, Powers and Trusts section 7-2.4 was ambiguous—that is, susceptible to more than one reasonable interpretation—due to its use of the word "void." We referred to the definitions of void in the current edition of Black's Law Dictionary. Under the first definition, the adjective "void" means "[o]f no legal effect"; "an absolute nullity." (Black's Law Dict., *supra*, p. 1891.) The second definition states: "Although sense 1 above is the strict meaning of *void*, the word is often used and construed to as bearing the more liberal meaning of 'voidable.' " (*Ibid*.) This opinion uses "strict" and "liberal" in accordance with the foregoing definitions of "void."

Our briefing orders referred to these dictionary definitions because, in the absence of a statutory definition, New York's Legislature and high court treat "dictionary definitions as 'useful guideposts' in determining the meaning of a word or phrase." (*Rosner v. Metropolitan Prop. & Liab. Ins. Co.* (2001) 96 N.Y.2d 475, 480 [754 N.E.2d 760]; NY Statutes, § 234.) Further, under the principle that a statute usually speaks "as of the time it took effect" (NY Statutes, § 93), the more appropriate edition of Black's Law Dictionary would be the one that was current when Estates, Powers and Trusts section 7-2.4 was enacted by Laws 1966, chapter 952. (See generally, *Delgado v. State of New York* (2022) 39 N.Y.3d 242, 300 [206 N.E.3d 598] [the court referred to

24.

"[d]ictionaries from the time of the amendment" before quoting a 1945 edition of Webster's Collegiate Dictionary].)  That edition also recognized two different meanings: "The word 'void' is used in statutes in the sense of utterly void so as to be incapable of ratification, and also in the sense of voidable[,] and resort must be had to the rules of construction in many cases to determine in which sense the Legislature intended to use it."  (Black's Law Dict. (4th ed. 1957) p. 1745.)

Plaintiff's supplemental reply brief acknowledges that New York courts have interpreted the work "void" in both an absolute sense and in a liberal sense.  Similarly, Wells Fargo's supplemental brief states New York courts have given "void" a range of meanings.  For instance, in *Blinn v. Schwarz* (1904) 177 N.Y. 252 [69 N.E. 542], the high court stated:  "The word 'void,' however, is used both in statutes and in decisions of the courts, with several meanings and seldom with the exact one."  (*Id*. at p. 259.)  After describing various meanings, the court summarized:  " 'Again; a thing may be void in several degrees: 1. void, so as if never done, to all purposes, so as all persons may take advantage thereof; 2. void to some purposes only; 3. so void by operation of law, that he who will have the benefit of it, may make it good.' "  (*Ibid*.)  In 1920, the New York Court of Appeals stated:

> "It is true that the term 'void' is often used in statutes, contracts, and judicial opinions when the term 'voidable' would be more accurate and correct.  Indiscriminate use has in a considerable extent destroyed the real though not broad difference in their meanings.  A void contract or act, in law, is from its inception null—a nothing—it cannot be ratified or confirmed and cannot be the subject of disaffirmance or election.  Such quality or character, however, need not exist as to all persons or for all purposes; it may be void or a mere nullity as to some persons and for some purposes only.  [Citation.]  Things which are without validity until confirmed are also often said to be void.  A contract or act which may be avoided or rendered null at the pleasure or choice of a party thereto is voidable, but not void until so rendered."  (*Lipedes v. Liverpool & London & Globe Ins. Co.* (1920) 229 N.Y. 201, 208–209 [usurious contracts are void and not merely voidable under New York usury statute] (*Lipedes*).)

The court, after this description of the various meanings of the term "void," set forth the following principles for determining which meaning to adopt:

> "In any given case we must ascertain the intent of the law which condemns the vitiating act. The effect the forbidden act may have on the contract depends upon the intent of the law which inhibits the act. It is a general rule of interpretation that contracts declared in terms void by statute because interdicted by law or by public policy are, in the correct and true meaning of the word, void." (*Lipedes*, *supra*, 229 N.Y. at p. 209.)

The parties have not cited, and we have not located, a more recent decision of the high court overruling (1) *Lipedes*'s description of the ways "void" can be interpreted; (2) the requirement that courts ascertain *the intent of the law* which condemns the challenged act; or (3) the general rule that a contract declared void by statute is void in the strict sense. Accordingly, we predict that the New York Court of Appeals would apply these three principles regarding the term "void" in addressing the meaning of Estates, Powers and Trusts section 7-2.4.

Next, we apply these principles about the term "void" to the initial step in the framework for construing a New York statute—namely, determining whether the statutory language has a plain meaning or is ambiguous. We predict the high court would conclude Estates, Powers and Trusts section 7-2.4 is ambiguous—that is, susceptible to several reasonable interpretations.[11]

---

[11] This conclusion that the use of "void" creates ambiguity is supported by case law from across the country and scholarly articles. (See *United States v. New York & Porto Rico S.S. Co.* (1915) 239 U.S. 88, 93; *Little v. CFS Service Corp.* (1987) 188 Cal.App.3d 1354, 1358, quoting Black's Law Dict. (5th ed. 1979) p. 1411 [definitions of void]; *In re Validation of $50,000 Serial Funding Bonds of Clarke County* (1940) 187 Miss. 512 [193 So. 449, 452] ["The terms void and voidable are sometimes used interchangeably."]; *Huggins Cracker & Candy Co. v. People's Insurance Co.* (1890) 41 Mo.App. 530, 544 ["The term 'void' is often used loosely and indefinitely both in statutes and by courts and does not usually mean that the act or proceeding is a nullity."]; Schaefer, *Beyond A Definition: Understanding the Nature of Void and Voidable Contracts* (2010) 33 Campbell L. Rev. 193, 208; Levin, *The Varying Meaning and Legal Effect of the Word "Void"* (1933) 32 Mich. L. Rev. 1088.)

### 6. *Identifying the Purpose Underlying Ambiguous Statutory Text*

To resolve the statute's ambiguity, "we must ascertain the intent of the law which condemns the vitiating act."[12] (*Lipedes*, *supra*, 229 N.Y. at p. 209.) That intent is ascertained by " 'inquir[ing] into the spirit and purpose of the legislation by examining the statutory context of the provision as well as its legislative history.' " (*NYC Organization of Public Service Retirees, Inc. v. Campion* (2024) 43 N.Y.3d 228, 235 [258 N.E.3d 1192].) The construction adopted should " 'not cause objectionable results or cause inconvenience, hardship, injustice, or mischief, or lead to absurdity.' " (*People v. Hernandez* (2025) 43 N.Y.3d 591, 600 [265 N.E.3d 1076].) In other words, a court chooses the interpretation that best promotes the purpose of the enactment and the objectives of the Legislature. (*Ibid*.; see NY Statutes, § 96 [the preferred construction "furthers the object, spirit and purpose of the statute"].)

In *Glaski*, we inquired into Estates, Powers and Trusts section 7-2.4's purpose and concluded: "The statutory purpose is 'to protect trust beneficiaries from unauthorized actions by the trustee.' (Turano, Practice Commentaries, McKinney's Consolidated Laws of New York Annotated (2002), Book 17B, Estates, Powers and Trusts Law, § 7–2.4, p. 356.)" (*Glaski*, *supra*, 218 Cal.App.4th at p. 1096, fn. 15.) The parties' supplemental briefs do not argue Estates, Powers and Trusts section 7-2.4 has a different purpose or has additional purposes. Accordingly, our resolution of Estates, Powers and Trusts section 7-2.4's ambiguity will seek to further the statutory purpose of protecting the beneficiaries of the trust from actions by the trustee that contravene the trust instrument.

---

[12] The vitiating (i.e., forbidden) acts in this case are "every sale, conveyance or other act of the trustee in contravention of the trust" (Estates, Powers and Trusts section 7-2.4) or, more specifically, transfers of the mortgage loans that violate the terms of the securitized trusts' pooling and servicing agreements.

### 7. *Statutory Interpretations Proposed by the Parties*

Plaintiff's supplemental reply brief asserts Estates, Powers and Trusts section 7-2.4 should be interpreted as establishing a general rule with an exception. The general rule holds transactions that contravene the trust instrument are void in the strict sense and this strict meaning applies, "except as authorized by this article and by any other provision of law." (Estates, Powers and Trusts § 7-2.4.) Plaintiff characterizes this interpretation as "a literal reading of the statute."

Plaintiff's discussion of the statutory exception to the general rule of strict voidness focuses on the phrase "authorized by … any other provision of law."[13] (Estates, Powers and Trusts § 7-2.4.) Plaintiff offers two interpretations of this phrase. The first asserts the term "provision of law" refers to a statute, not common law principles. The second asserts that if common law principle governing the ratification of an unauthorized act apply, ratification is not permitted by law in the circumstances of this case. In plaintiff's view, the legal principle that prevents such a ratification provides that "[w]here the right of a third person has … intervened before an act and its ratification, the ratification is ineffective." (*People ex rel. Goldschmidt v. Board of Education* (1916) 217 N.Y. 470, 474 [112 N.E. 167]; see 2A N.Y.Jur.2d (2026) Agency, § 178 ["ratification does not date back to achieve an inequitable result"].) Under this principle, plaintiff argues the challenged assignments cannot be ratified because the borrowers' causes of action for cancellation of the assignments arose concurrently with the untimely assignments of the mortgage loans to the trustee of the securitized trust. Plaintiff also argues there must be an actual ratification, not merely the possibility of ratification as asserted by Wells Fargo, and there has been no ratification of the untimely assignment by the beneficiaries of the trusts.

---

[13]     Plaintiff's approach implies that the part of the exception expressed in the phrase "as authorized by this article" has no application to the facts of this case. (Estates, Powers and Trusts § 7-2.4.) Wells Fargo does not contend otherwise.

In contrast, Wells Fargo's supplemental brief argues "[i]nterpreting § 7-2.4 as rendering a trustee's ultra vires acts voidable only by the trust's beneficiaries better promotes th[e sole] statutory purpose," which is the protection of the trust's beneficiaries. Wells Fargo asserts this interpretation is a codification of the common law rules treating ultra vires acts as voidable. Wells Fargo justifies this interpretation on the grounds that trust beneficiaries can and should decide for themselves whether to avoid a trustee's ultra vires act and, furthermore, allowing third parties with differing or conflicting interests to do so would harm, not protect, the beneficiaries.

### 8.    History of the Legislation

Neither party has presented any materials or documents considered or generated by the New York Legislature in connection with the enactment of Estates, Powers and Trusts section 7-2.4 or its predecessors. (See NY Statutes, § 125 ["courts may utilize legislative proceedings to ascertain the legislative intent"].) However, they have addressed the statute's history by comparing its text to the text of its predecessors and presenting arguments about how changes in the text impacted the meaning of Estates, Powers and Trusts section 7-2.4.

Wells Fargo's historical analysis begins by asserting that "[s]ection 7-2.4 is derived from former Real Property Law section 105, which, itself, recodified 1 Rev.Stat. p. 730, § 65 (1829)." Wells Fargo asserts the 1829 statute provided:

> "Where the trust shall be expressed in the instrument creating the estate, every sale, conveyance or other act of the trustees, in contravention of the trust, shall be absolutely void."[14]

---

[14]    In *Genet v. Hunt* (1889) 113 N.Y.158 [21 N.E. 92], the high court described this provision by stating: "The statute makes every conveyance or other act of the trustees of an express trust in lands, in contravention of the trust, absolutely void, and, by analogy, the same rule governs trusts of personal property. (1 R. S. 730, § 65; *Graff v. Bonnett*, 31 N. Y. 9; *Campbell v. Foster*, 35 id. 361.)" (*Genet*, *supra*, at p. 168.) The use of the term "absolutely void" appears to track the text of the statute then in effect.

The successor statute, former section 105 of McKinney's Consolidated Laws of New York Annotated: New York Real Property Law (Real Property Law), made minor changes and added an exception, which is italicized in the following quote:

> " 'If the trust is expressed in the instrument creating the estate of the trustee, every sale, conveyance or other act of the trustee, in contravention of the trust, *except as authorized in this article*, shall be absolutely void.' " (*Application of Muratori* (1944) 183 Misc. 967, 970 [52 N.Y.S.2d 350, 353], quoting Real Property Law former § 105.)

Real Property Law former section 105 was replaced by Estates, Powers and Trusts section 7-2.4 when the New York Legislature enacted the Estates, Powers and Trusts Law in 1966. (See Estates, Powers and Trusts §§ 1-1.1 [short title], 14-3.1 [effective date September 1, 1967].) When compared to the version of Real Property Law former section 105 quoted in the 1944 decision, Estates, Powers and Trusts section 7-2.4 contains an expanded exception and uses "is void" (present tense) in place of "shall be absolutely void" (future tense). As a result, Estates, Powers and Trusts section 7-2.4 currently reads:

> "If the trust is expressed in the instrument creating the estate of the trustee, every sale, conveyance or other act of the trustee in contravention of the trust, except as authorized by this article *and by any other provision of law, is* void." (Italics added.)

Wells Fargo contends that the added phrase "by any other provision of law" should be interpreted to include common law principles—specifically, the common law principle that a trustee's ultra vires acts may be ratified and, thus, such acts are merely voidable at the election of the trustee's beneficiaries. Wells Fargo suggests this interpretation is supported by the deletion of "absolutely."

In response, plaintiff refers to "page 356 of volume 17B of McKinney's Consolidated Laws of New York"; asserts that below the practice commentaries of Margaret Valentine Turano there is a heading for legislative studies and reports; and quotes the entries under that heading: "Source: RPL § 105. [¶] Changes: None. [¶]

30.

Comments: This section re-enacts RPL § 105 without changes." Plaintiff argues the term "absolutely void" used in the predecessor statutes meant void in the strict sense and the entries quoted above establish beyond dispute the legislative intent was to continue to use the term void in that strict sense, subject only to the statutory exception. In addition, plaintiff argues the term "provision of law" used in the statutory exception appears to refer to a statute, not the common law, and Wells Fargo failed to cite any New York case or treatise establishing Estates, Powers and Trusts section 7-2.4 is declaratory of the common law.

### 9. *The Ambiguous Statutory Exception*

Initially, we consider the parties' dispute over the meaning of the phrase "any other provision of law" added to the statutory exception when Estates, Powers and Trusts section 7-2.4 was enacted. The threshold inquiry is whether those words are ambiguous—that is, susceptible to more than one reasonable interpretation. One possible interpretation is narrow and treats the phrase as referring to statutory provisions only. (See *Brinckerhoff v. Bostwick* (1885) 99 N.Y. 185, 190–191 [1 N.E. 663] ["Such expressions as 'required by law,' 'regulated by law,' 'allowed by law,' 'made by law,' 'limited by law,' 'as prescribed by law,' 'a law of the State,' are of frequent occurrence in the Codes and other legislative enactments; and they are always used as referring to statutory provisions only."].) Another possible interpretation is broad and treats the phrase as encompassing rules established by the constitution, statute, administrative regulation, or the common law. We have not located, and the parties have not cited, a high court decision addressing the meaning of the phrase, either as it appears in Estates, Powers and Trusts section 7-2.4 or another statute.

Our evaluation of the reasonableness of the broad and narrow interpretations considers the meaning of the words contained in the phrase. The edition of Black's Law Dictionary that was current when Estates, Powers and Trusts section 7-2.4 was enacted

31.

defined "law" as follows:  "That which is laid down, ordained, or established.…  That which must be obeyed and followed by citizens, subject to sanctions or legal consequences is a 'law.'  Koenig v. Flynn, 258 N.Y. 292, 179 N.E. 705."  (Black's Law Dict. (4th ed. 1957) p. 1028.)  The dictionary recognizes that "law" can be interpreted narrowly to "denote enactments of legislative power" or broadly as being "derived either from judicial precedents, from legislation, or from custom."  (*Id*. at pp. 1028–1029.)  The dictionary's list of "the different kinds of law" includes "Common Law."  (*Id*. at p. 1029.)  This variety of meanings is reflected in the high court's statement that the word "law" as used in the phrase " 'fixed by law' " could mean a "statute or something more capacious."  (*Delgado v. State*, *supra*, 39 N.Y.3d at p. 281; see generally, Evid. Code, § 160 [" 'Law' includes constitutional, statutory, and decisional law."].)

The use of the term "any other" could be viewed as supporting the broader interpretation offered by Wells Fargo.  "Any" means "one out of many; an indefinite number.  [Citation.]  One indiscriminately of whatever kind or quantity."  (See Black's Law Dict. (4th ed. 1957) p. 120.)  "Other" means "[d]ifferent or distinct from that already mentioned; additional, or further."  (*Id*. at p. 1253.)  Thus, the inclusion of "any other" in the phrase "any other provision of law" arguably supports interpreting "law" to encompass the common law.

In contrast, the inclusion of "provision of" in the phrase could indicate a different, less expansive legislative intent because the word "provision" typically is used to refer to a statute rather than the common law.  For example, in *Shimamoto v. S&F Warehouses, Inc.* (2002) 99 N.Y.2d 165 [783 N.E.2d 484], the court used the phrase "statutory provisions and the common law" rather than "statutory and common law provisions."  (*Id*. at p. 178; see Black's Law Dict. (12th ed. 2024) p. 1482 ["provision" defined as a clause in a statute, contract, or other legal instrument].)  However, the high court has used the word "provision" in referring to the common law, though that usage is rare.  (See *Hanfgarn v. Mark* (1937) 274 N.Y. 22, 26 [8 N.E.2d 47] ["the provisions of the common

law"].)  Also, if the Legislature had intended to include common law principles in the exception, other phrases, such as the shorter "any other law," seem to be more likely candidates for expressing that intent.  Stated from another perspective, giving the phrase "any other provision of law" an expansive reading might render the term "provision of" surplusage.

Based on the absence of any legislative materials directly on point and the conflicting inferences that can be drawn from the text and its history, we conclude the phrase "any other provision of law" in the statute's exception is ambiguous—that is, susceptible to more than one reasonable interpretation.  Specifically, it could refer only to authorizations contained in other New York statutes or it could refer to authorizations provided for by statute and the common law.  Therefore, the expanded exception contained in Estates, Powers and Trusts section 7-2.4 does not resolve the ambiguity of the word "void" or the ambiguity of the statute in general.

### 10.     *Annotations and Legislative Intent*

Next, we consider plaintiff's argument that annotations after Estates, Power and Trusts section 7-2.4 establish beyond dispute that the statute used "void" in the strict sense.  As described earlier, the entries under the heading for legislative studies and reports state:  "Changes:  None" and "This section re-enacts [Real Property Law] § 105 without changes."  The parties have not provided this court with the source of entries.  For purposes of this appeal, we assume that the entries are taken from a "report[] of the commissioners or revisors" who were involved in the 1966 enactment of the Estates, Powers and Trusts Law.  (See NY Statutes, § 423 ["The court may consider the reports of the commissioners or revisors in determining the meaning of the statutes to which such reports pertain."]; see also, *Matter of Estate of Best* (1985) 66 N.Y.2d 151, 154 [485 N.E.2d 1010] [citing "Revisors' Notes to [Estates, Power and Trusts] 1-2.10"].)

If the entries are interpreted to mean there were no *textual* changes, it raises the question of their accuracy because the language of the version of Real Property Law former section 105 quoted in *Application of Muratori*, *supra*, 183 Misc. at page 970 is different from the wording of Estates, Power and Trusts section 7-2.4. Specifically, the current statute uses "is" rather than "shall be absolutely" and has an expanded exception. If the entries accurately state there was no textual change, then Real Property Law former section 105 was amended sometime between 1944 and the 1966 enactment of Estates, Power and Trusts section 7-2.4. Alternatively, if the entries are inaccurate, then they are not a reliable source from which to infer legislative intent. In the face of this uncertainty and the absence of any materials from the "legislative proceedings" that changed the text for Real Property Law former section 105 (see NY Statutes, § 125 [use of "legislative proceedings to ascertain the legislative intent"]), we are reluctant to use the entries to draw inferences about legislative intent. Based on the record before us, the entries are themselves ambiguous and, thus, do not provide a reliable guide for resolving the statutory ambiguity.

> 11.    *Deletion of the Modifier "Absolutely"*

Wells Fargo asserts that Estates, Powers and Trusts section 7-2.4 deems unauthorized acts merely "void," not "absolutely void" as the predecessors did, which indicates the unauthorized acts may be ratified—that is, the acts are merely voidable, not void in the strict sense. This inference about legislative intent is countered by the fact that clearer wording was readily available to express the intent asserted by Wells Fargo. Specifically, the Legislature could have stated an unauthorized act "is voidable" rather than stating the act "is void." Thus, the removal of "absolutely" and the retention of "void" gives rise to conflicting inferences about the Legislature's intent when it enacted Estates, Powers and Trusts section 7-2.4.

34.

### 12. *Comparison to Other Statutes Using the Word "Void"*

The parties' supplemental briefs support their arguments about the meaning of the word "void" by referring to other New York statutes that use "void." Wells Fargo refers to subdivision 1 of Real Property Law section 231, which provides that whenever a lessee or occupant uses the premises "for any illegal trade, manufacture or other business, the lease … shall thereupon become void, and the landlord of such lessee or occupant may enter upon the premises so let or occupied."

> "[W]hen subdivision 1 of section 231 of the Real Property Law uses the word 'void', it means that the lease becomes 'void' at the option of the landlord. On the one hand, the landlord may not wish to insist on the forfeiture. On the other hand, a tenant would not be permitted automatically to abort a lease by performing illegal acts in the premises. Hence, the word 'void' in subdivision 1 of section 231 actually means voidable at the option of the landlord; and it was so stated long since (Shaw v. McCarty, 59 How. Prac. 487, 489 [1880])." (*220 West 42 Associates v. Cohen* (N.Y.Sup.Ct. 1969) 60 Misc.2d 983, 985–986 [302 N.Y.S.2d 494, 497] (per curiam); see *People v. Robertson* (1978) 61 A.D.2d 600, 605 [403 N.Y.S.2d 234], aff'd 48 N.Y.2d 993 [401 N.E.2d 903].)

Plaintiff argues the phrase "shall thereupon become void" used in Real Property Law section 231, which is accompanied by an authorization that allows the landlord to enter upon the premises, is not self-executing and, thus, is not the equivalent of the unequivocal phrase "is void" used in Estates, Powers and Trusts section 7-2.4.

Plaintiff also refers to section 7 of McKinney's Consolidated Laws of New York Annotated: Domestic Relations Law (Domestic Relations Law), which states that "[a] marriage is void from the time its nullity is declared by a court" due to specified defects in consent, which include consent procured by force, duress or fraud. (See *Skagen v. New York City Employees' Retirement System* (1981) 108 Misc.2d 448, 450 [437 N.Y.S.2d 497] [marriage procured by fraud "is merely voidable, subject to appropriate action by the defrauded party"].) Plaintiff asserts Domestic Relations Law section 7 and Real Property Law section 231 are properly classified as statutes that provide, directly or indirectly that an instrument or action is void only following action taken by an interested

35.

party and it is the requirement for action that justifies interpreting "void" to mean "voidable." Thus, plaintiff distinguish Estates, Powers and Trusts section 7-2.4 from Domestic Relations Law section 7 because the former's term "is void" is not qualified by any further language, such as "from the time its nullity is declared by a court." (Domestic Relations Law, § 7.)

Plaintiff asserts there is a second class of statutes that simply state an instrument or action is void, and those statutes use void in its strict sense. Plaintiff contends Estates, Powers and Trusts section 7-2.4 belongs in this class along with McKinney's Consolidated Laws of New York Annotated: General Obligations Law (General Obligations Law) sections 5-511, 5-521, and 5-703. Subdivision (1) of General Obligations Law section 5-511 provides that usurious contracts "shall be void." Subdivision (2) of General Obligations Law section 5-511 provides that whenever it is proven that a bill, note, or contract violates the usury law, "the court shall declare same to be void, and enjoin any prosecution thereon, and order the same to be surrendered and cancelled." General Obligations Law section 5-521, subdivision (2) states that any contract waiving the defense of usury "is hereby declared contrary to public policy and absolutely void."

New York's statutes of frauds also use the word "void." Subdivision (2) of General Obligations Law section 5-703 provides that a contract for the sale of an interest in real property or a real property lease exceeding one year "is void" unless it is in writing and subscribed by the party to be charged. This language has been interpreted to mean that an oral contract to sell real property "is void for all purposes. It confers no right and creates no obligation as between the parties to it; and no claim can be founded upon it as against third persons. It cannot be enforced directly or indirectly." (*Levy v. Ross* (1948) 81 N.Y.S.2d 472, 473.) Alternatively, it has been interpreted to mean "only voidable and unenforceable at the election of the party to be charged." (*Raoul v. Olde Village Hall, Inc.* (1980) 76 A.D.2d 319, 328 [430 N.Y.S.2d 214].) In *Raoul*, the court

36.

stated that, "despite the express wording of subdivision 2 of section 5-703 of the General Obligations Law that such oral contracts are 'void', the courts of this State have construed the statute to be merely a rule of evidence (*Hutchins v. Van Vechten* [(1983)] 140 N.Y. 115, 120) which, like the construction of the English statute, bars only the remedy and does not make the contract absolutely void." (*Raoul*, *supra*, at p. 328.) Addressing cases holding the statute of frauds did not have to be pleaded as an affirmative defense, the court stated those cases "all rest upon the long overruled notion that such contracts are void rather than voidable." (*Id.* at p. 330; see 61 N.Y.Jur.2d (2026) Frauds, Statute of, § 245 [statute of fraud is viewed as a rule of evidence that "affects the proof of an agreement and does not render it absolutely void or illegal, but only voidable, at the election of the party to be charged"].)

The term "is void" also appears in General Obligations Law section 5-701, subdivision (a)(1), which states that every agreement that, by its terms is not to be performed within one year, "is void, unless it … be in writing, and subscribed by the party to be charged." New York courts have not adopted the strict meaning of void when interpreting this statute. For instance, the Appellate Division of the Supreme Court of New York County applied the statute to an oral agreement that "was incapable of performance within one year, rendering it *voidable* absent a writing signed by the party to be charged or his duly authorized agent." (*McCoy v. Edison Price, Inc.* (1992) 186 A.D.2d 442, 443 [588 N.Y.S.2d 566], italic added; see *Eurofactors International, Inc. v. Jacobowitz* (2005) 21 A.D.3d 443, 445 [800 N.Y.S.2d 569] ["oral agreement which falls within the statute of frauds is not absolutely invalid, but is only voidable"].)

We conclude the various provisions of the statute of frauds are not useful analogies to Estates, Powers and Trusts section 7-2.4 because Estates, Powers and Trusts section 7-2.4 is not conceptualized as a rule of evidence. We further conclude that conflicting inferences of legislative intent that can be drawn from comparing the use of "void" in Estates, Powers and Trusts section 7-2.4 to the various ways it is used in other

statutes. Due to those conflicts, the comparative of analysis does not clearly demonstrate what meaning was intended by the use of the term "is void" in Estates, Powers and Trusts section 7-2.4.

### 13. *Resolving the Ambiguity Based on the Statute's Purpose*

Because the foregoing arguments did not firmly support a particular interpretation, we predict that the New York Court of Appeals ultimately would resolve the ambiguity in Estates, Powers and Trusts section 7-2.4 by referring to the statute's purpose. In other words, the court would prefer the interpretation that best "furthers the object, spirit and purpose of the statute." (NY Statutes, § 96.) As described in part I.B.6. of this opinion, Estates, Powers and Trusts section 7-2.4's purpose is to protect the trust's beneficiaries from any "act of the trustee in contravention of the trust" instrument. (*Ibid.*)

Our prediction of how the New York high court would interpret the statute is necessarily limited to the facts presented in this case. Here, the challenge is raised by a third party claiming the assignments to the trustees of securitized trusts are void in the strict sense.[15] Accordingly, we express no opinion on how the statute should be interpreted when the challenge is raised by a party to the transaction or by a beneficiary of the trust.

A variety of interpretations are possible because the New York Court of Appeals has recognized that when a statute uses the word "void," a single meaning "need not exist as to all persons or for all purposes." (*Lipedes, supra*, 229 N.Y. at p. 209.) In light of this flexibility, a prohibited act or transaction "may be void or a mere nullity as to some persons and for some purposes only." (*Ibid.*) Consequently, in the context of a third party challenge, more than two interpretations of the statute are possible. In other words, there are more possibilities than simply treating the assignment as *always void* or *always*

---

[15] Some decisions refer to such a third party as "a stranger to the trust." (*Rajamin, supra*, 757 F.3d at p. 89; *Mendoza, supra*, 6 Cal.App.5th at p. 816; *Yhudai v. IMPAC Funding Corp., supra*, 1 Cal.App.5th at p. 1259.)

*voidable*. Here, plaintiff has proposed an intermediate interpretation in the form of a general rule holding the assignment void in the strict sense subject to exceptions, such as allowing the assignment to be deemed voidable and thus subject to ratification by the beneficiaries of the trust if permitted by law and the ratification would not interfere with the rights of the third party challenger. Plaintiff's proposal of a general rule is consistent with the following sentence in *Lipedes*: "It is a general rule of interpretation that contracts declared in terms void by statute because interdicted by law or by public policy are, in the correct and true meaning of the word, void." (*Lipedes*, *supra*, 229 N.Y. at p. 209.)

In evaluating which interpretation better serves the statute's purpose, we consider the consequences of each side's interpretation, both for all types of trust in general and for securitized trusts that qualify as a REMIC under the Internal Revenue Code in particular. (See 26 U.S.C. §§ 860A–860G.) In general, the interpretation allowing third parties such as plaintiff to void unauthorized transactions entered on behalf of the trust will protect trust beneficiaries when the challenged transaction is detrimental to the beneficiaries and, alternatively, will harm the trust beneficiaries when the transaction advances the interests of the beneficiaries. Wells Fargo's supplemental brief refers only to the possibility where the interests are in conflict and fails to address the second possibility.

Due to the possibility of either aligned or conflicting interests, we conclude that neither proposed interpretation will always serve the statute's purpose. The consequences to the trust's beneficiaries (i.e., a harm or a benefit) will vary depending upon the circumstances of a particular case. For example, voiding a transaction that contravenes the terms of the trust instrument but is financially advantageous to the beneficiaries does not protect their financial interests. In that situation, treating the transaction as void and thus subject to a third party challenge would " 'cause

39.

objectionable results.' " (*People v. Hernandez*, *supra*, 43 N.Y.3d at p. 600 [265 N.E.3d 1076].)

The uncertain impact of allowing third parties to challenge prohibited transactions also exists in the specific context of transfers of mortgage loans into a securitized trust more than three months after the trust's closing date. Plaintiff phrases its arguments in terms of risk, rather than actual impact. Plaintiff contends treating an untimely assignment as void in the strict sense evades "the twin risks posed by the REMIC statute: the 100% tax otherwise visited on the net income arising from a prohibited transaction under 26 U.S.C. §860F(a)(1) and the possible loss of the Trust's REMIC status under 26 U.S.C. §860D(a)(2)(A)."

First, Wells Fargo counters that the "tax equal to 100 percent of the net income derived from prohibited transactions" (26 U.S.C. § 860F, subd. (a)(1)) is preferable to the loss of principal the trust and its beneficiaries would suffer from voiding a late transfer of a mortgage loan into the trust. This argument appears to have merit because the recovery of principal is likely to exceed the net income, if any, realized by the trust after a nonjudicial foreclosure.

Second, federal tax law does not automatically deprive a REMIC of its tax status as a flow-through entity when it holds a mortgage loan transferred in violation of the closing date requirement. (See 26 C.F.R. § 1.860D-1 [definition of a REMIC].) Under the asset test of section 860D(a)(4) of title 26 of the United States Code, substantially all of a REMIC's assets must be "qualified" mortgages and permitted investments; however, a REMIC may own "a de minimis amount of other assets" that are not qualified. (26 C.F.R. § 1.860D-1(b)(3)(i).) To be "qualified," a mortgage loan must be acquired by the REMIC within three months of the REMIC's closing date, which federal tax law refers to as the startup day. (See 26 U.S.C. § 860G(a)(9) [definition of startup day]; 26 C.F.R. § 1.860G-2(k) [same]; *Mendoza*, *supra*, 6 Cal.App.5th at p. 818.) The de mininus standard is met if the unqualified assets and investments have an aggregate adjusted tax

bases of "less than one percent of the aggregate of the adjusted bases of all of the REMIC's assets." (26 C.F.R. § 1.860D-1(b)(3)(ii) [asset test's safe harbor].)

As a practical matter, the risk that a securitized trust would lose its status as a flow-through entity for federal income tax purpose also is affected by the Internal Revenue Service's enforcement policy. (See generally, *SC Note Acquisitions, LLC v. Wells Fargo Bank, N.A.* (E.D.N.Y. 2013) 934 F.Supp.2d 516, 521 [IRS "has not yet determined that the trust has lost this status"], affirmed (2d Cir. 2014) 548 Fed.Appx. 741.) To aid our evaluation of that risk, a briefing order asked plaintiff if it had "located any state or federal decision, tax court decision, private letter ruling, or other authority holding a securitized trust lost (or did not lose) its status [by accepting] transfers of mortgage loans more than three months after the trust's closing (i.e., startup) date." Plaintiff responded by stating it had not located any authority holding that a securitized trust lost its REMIC status after accepting untimely transfers of mortgage loans.

We predict the uncertainty of how the untimely transfer of mortgage loans to a securitized trust will impact the trust's beneficiaries will cause the New York high court to interpret Estates, Powers and Trusts section 7-2.4 to mean transfers in contravention of the trust's pooling and servicing agreement are merely voidable and, thus, cannot be challenged by third parties. This interpretation prevents the objectionable result of third parties nullifying transactions that advance, rather than harm, the financial interests of the trust's beneficiaries. We recognize this interpretation also precludes challenges from third parties that would have nullified transactions harmful to the trust's beneficiaries, but that consequence will occur only if the beneficiaries do not take action to protect their own interests. On balance, the interpretation that prevents third parties—strangers to the challenged transaction—from negating the transaction best promotes the statutory purpose of protecting the beneficiaries of trust.

To summarize, we predict that, in the context of a challenge by a third party to the assignment of a mortgage loan to a securitized trust where that party is not a beneficiary

41.

of the trust, the New York Court of Appeals will determine Estates, Powers and Trusts section 7-2.4 is ambiguous and will interpret the word "void" to mean merely voidable. Consequently, the FAC has not stated a cause of action under the legal theory that the assignments of the mortgage loans to the securitized trusts in violation of the trust's pooling and servicing agreements are void in the strict sense.

We close our analysis of New York law by addressing plaintiff's criticism of *Rajamin* and other decisions for relying on the "fiction of ratification as a method of making voidable that which is declared void by the statute." Plaintiff contends securitized trust have thousands of certificate holders (i.e., beneficiaries) and obtaining "ratifications of every Certificateholder must be deemed to be impracticable as a matter of law" and, therefore, the ratification rationale is unworkable. This argument misses the mark. (See *Bank of America National Assn. v. Bassman FBT, LLC, supra,* 981 N.E.2d at p. 9 [interpreting the statutory term "void" to mean merely voidable does not depend on whether the transaction was in fact ratified].) Most importantly, the argument does not address the fundamental question presented—which interpretation best promotes the statute's purpose. As a result, plaintiff's criticism of the ratification rationale that plays a central role in some decisions does not affirmatively demonstrate that the strict interpretation of "void" provides the best protection to the beneficiaries of trusts governed by New York law.

## II.    INEFFECTIVE TRANSFERS BY MERS

Plaintiff also contends all assignments of the borrowers' deeds of trust executed by MERS were ineffective and, as a result, every attempted conveyance by MERS in California was void. First, plaintiff asserts MERS failed to comply with section 1095, which required MERS to execute the assignment as attorney in fact and include the name of the entity for which it acted. Second, plaintiff asserts MERS lacked title to the promissory notes and could not transfer the promissory notes, which rendered the

attempted transfers of the related deeds of trust ineffective. Third, plaintiff alleges an assignment of MERS's interest in a deed of trust was required to be in writing by Code of Civil Procedure section 1971 and, under the equal dignities rule of section 2309, MERS's authority to execute an assignment of a deed of trust, also was required to be in writing.

A.    Civil Code Section 1095

Section 1095 provides in full: "When an attorney in fact executes an instrument transferring an estate in real property, he must subscribe the name of his principal to it, and his own name as attorney in fact." California courts have recognized the failure to comply with this provision renders the instrument void. (E.g., *Hodge v. Hodge* (1967) 257 Cal.App.2d 31, 39 [deed was void because the requirements of § 1095 were not followed]; *Puccetti v. Girola* (1942) 20 Cal.2d 574, 577 [failure to follow the mandate of § 1095 "renders a deed void"]; *Mitchell v. Benjamin Franklin Bond & Indem. Corp.* (1936) 13 Cal.App.2d 447, 448 [deed did not comply with § 1095; plaintiff entitled to judgment declaring the deed void].) Accordingly, if section 1095 applies to MERS's assignments of the mortgage loans *and* the assignments did not comply with section 1095, plaintiff will have stated a wrongful foreclosure claim that identifies a defect in the assignments that renders them void, rather than merely voidable.

Plaintiff argues section 1095 applies to the assignments of the deeds of trust by MERS because such assignments transferred "an estate in real property." (§ 1095.) Wells Fargo disagrees and contends MERS's assignments were not made by an "attorney in fact" and, furthermore, a deed of trust is not an "instrument transferring an estate in real property" for purposes of section 1095.

B.      Estates and Other Interests in Real Property

Decisions of the Court of Appeal and federal courts addressing the theory that MERS is subject to section 1095 when it assigns a deed of trust are not published.[16] Plaintiff argues that all the unpublished federal court decisions are poorly reasoned. We do not rely on those decisions, but will conduct an independent analysis of how to interpret section 1095's phrase "an estate in real property." That analysis begins with a treatise that addresses what constitutes an *estate* in real property, how such an estate differs from other types of *interests* in real property, and whether a deed of trust creates an estate in real property:

> " **'Estate' defined**. The word 'estate' means an interest in land that is, or may become, *possessory*. A person who has an estate has the right to possess and enjoy the property, either presently or in the future, for a period of time that may be long or short, definite or indefinite, depending on the nature of the particular estate. As used in relation to an ownership interest in real property, the term 'estate' signifies the degree, quantity, nature, and extent of the interest that a person has in real property. An estate is the ownership of property measured in terms of its duration.

> " **'Estate' distinguished from 'interest.'** Although all estates are interests in land, not all interests in land are estates. A security

**16**      No reference was made to section 1095 in *Fontenot v. Wells Fargo Bank, N.A.* (2011) 198 Cal.App.4th 256, disapproved on another ground in *Yvanova*, *supra*, 62 Cal.4th 919, 939, footnote 13. There, the First District stated there was no inconsistency in the deed of trust designating MERS "both as the beneficiary and as a nominee, i.e., agent, for the lender." (*Fontenot v. Wells Fargo Bank, N.A., supra,* at p. 273.)

In *Fonteno v. Wells Fargo Bank, N.A.* (2014) 228 Cal.App.4th 1358, the plaintiff relied on section 1095 in arguing the substitution of trustee under the deed of trust was defective because it was signed by Chet Sconyeye as an attorney in fact and did not "identify First American [Trustee Servicing Solutions LLC] as the principal for which Sconyeye was signing." (*Fonteno v. Wells Fargo Bank, N.A.*, *supra,* at p. 1378.) The court assumed section 1095 applied and concluded the signature block on the substitution complied with the statute because it "sufficiently indicates the signatory was acting for First American by identifying him as 'its' attorney in fact." (*Fonteno v. Wells Fargo Bank, N.A.*, *supra*, at p. 1378.) The court's assumption is precedent for the conclusions that section 1095 applies to a trustee's assignment of a deed of trust.

device, such as a mortgage or a deed of trust, is an interest in land that does not convey any estate in real property. The interest conveyed by such a device is merely a lien or charge on the land encumbered." (4 Miller & Starr, Cal. Real Estate (4th ed. 2025) § 12:1, pp. 1068–1069, fns. omitted.)

The treatise also explains that "[d]ifferent estates may coexist in the same piece of land" and lists common examples as tenants-in-common, joint tenants, persons holding separate interests in the common elements of a condominium, and fee owners of land where the minerals in the land owned in fee by others. (4 Miller & Starr, Cal. Real Estate, *supra*, § 12:1, p. 1069.) Estates can be classified in various ways, including by the duration of their enjoyment (e.g., a perpetual estate or estate for life), by their quality (absolute or qualified), the time of their enjoyment (present or future interests), or the number of owners (estates in severalty or in common). (*Id.*, § 12:2, pp. 1070–1071.) Consistent with the treatise's distinction between *estates* and other *interests* in real property, its examples of coexistent estates and its classifications of estates do not describe the trustee or beneficiary under a deed of trust as holding a coexisting estate with the borrower who holds a fee simple estate in the real property securing the loan.

The treatise supports its definition of "estate" by citing section 701. (4 Miller & Starr, Cal. Real Estate, *supra*, § 12:1, p. 1069, fn. 1.) Plaintiff's opening brief quotes section 701, which provides: "In respect to real or immovable property, the *interests* mentioned in this chapter are denominated *estates*, and are specially named and classified in part two of this division." (Italics added.) The term "this chapter" refers to chapter 2 (modifications of ownership) of title 2 (ownership) of part 1 (property in general) of division 2 (property) of the Civil Code. Chapter 2 contains four articles—interests in property (§§ 678–703), conditions of ownership (§§ 707–714.7), duration of leases (§§ 715–719), and accumulations (§§ 722–726).

C.      Plaintiff's Statutory Analysis and Arguments

Plaintiff contends the transfer by MERS of its beneficial interest in a deed of trust includes the transfer of a future interest recognized by the Civil Code as an estate in land.

45.

This view of California real property law is supported by plaintiff's argument that (1) equitable estates are on par with legal estates; (2) both are estates originating by law; (3) the interest of the trustee of a deed of trust is a fee simple interest; (4) this estate held by the trustee will end if the trustor pays off the debt secured by the deed of trust or if the trustor defaults and the underlying property is sold at a foreclosure sale; (5) the trustee's interest is a fee simple defeasible; (6) every estate in fee simple defeasible is accompanied by a future interest; (7) in the context of a deed of trust, the future interest is properly termed a power of termination; (8) a power of termination is an estate usually referred to as an estate subject to an executory limitation. Based on this line of reasoning, plaintiff concludes the trustee's interest in the property subject to a deed of trust is a fee simple subject to an executory limitation, and the beneficiary possesses a corresponding future interest known as a power of termination.

### 1. Theory That an Estate Vests in the Trustee of a Deed of Trust

We first consider plaintiff's assertion that the interest of the trustee appointed in a deed of trust is a fee simple interest properly characterized as an estate. Plaintiff supported this assertion by citing *Charles A. Warren Co. v. All Persons Claiming Interest* (1908) 153 Cal. 771 (*Warren Co.*) and an Attorney General opinion (59 Ops.Cal.Atty.Gen. 386, 389–390 (1976)).

In *Warren Co.*, the plaintiff claimed ownership of a plot of land and brought an action to quiet title that described the source of his title and then alleged the land was subject to a lien for $15,000 secured by a deed of trust in favor of a savings union. (*Warren Co.*, *supra*, 153 Cal. at p. 772.) The savings union and Mercantile Trust Company, the trustee under the deed of trust, filed an answer seeking a "judgment declaring the Mercantile Trust Company to be the owner of the land subject to the terms of the deed of trust." (*Id*. at p. 773.) The trial court entered a judgment declaring the plaintiff to be the owner in fee simple of the property subject to the deed of trust

46.

Mercantile Trust Company held as security for money loaned. (*Ibid*.) The savings union and Mercantile Trust Company appealed. The Supreme Court affirmed the judgment. (*Id*. at p. 776.)

The savings union and Mercantile Trust Company argued on appeal that the deed of trust vested title in fee in the trustee, Mercantile Trust Company, and as long as the trustee held such title, the plaintiff had no estate or interest that would allow the plaintiff to maintain a quiet title action. (*Warren Co*., *supra*, 153 Cal. at p. 773.) The appellants relied on former section 863, which provided that " 'every express trust in real property, valid as such in its creation, vests the whole estate in the trustees, subject only to the execution of the trust' and the 'beneficiaries take no estate or interest in the property[.]' " (*Warren Co.*, *supra*, at p. 774.)[17] They argued "the execution of the deed of trust to the Mercantile Trust Company vested the whole estate in such trustee, and there remained in the grantor and his successors no 'estate or interest in the property' " that would give the plaintiff standing under the quiet title act. (*Ibid*.) The Supreme Court established context for its analysis of this argument by acknowledging it was settled that deeds of trust "create valid express trusts" and "such instruments do not create a mere lien or incumbrance, but vest in the trustee the legal title to the property[.]" The court, however, concluded that these principles did not mean no estate remained in the borrower-trustor and determined a grantee of the borrower-trustor "acquires a *legal estate* in the property." (*Id*. at p. 775.) Under the former Civil Code provisions, the court stated that "the creation of the trust may vest an estate in the trustee, and still leave an estate in the trustor" and

---

**17** Former section 863 stated in full: " 'Except as hereinafter otherwise provided, every express trust in real property, valid as such in its creation, vests the whole estate in the Trustees, subject only to the execution of the trust. The beneficiaries take no estate or interest in the property, but may enforce the performance of the trust.' " (*Anderson v. Superior Court* (1983) 142 Cal.App.3d 112, 116, fn. 4.) This section was repealed by the Legislature in 1986. (See 2 Stats. 1986, ch. 820, § 5, p. 2729; Recommendation Proposing the Trust Law (Dec. 1985), 18 Cal. Law Revision Com. Rep. (1986) pp. 501, 793 (*Recommendation*).)

"the trustee takes a fee, such estate being necessary for the carrying out of the trust to sell if the debt should not be paid." (*Ibid.*) The court also stated the interest left with the trustor was an estate and could be passed by devise or descent and concluded the trustor had the right to maintain a quiet title action. (*Ibid.*)

We conclude the Supreme Court's statement that the trust created by a deed of trust "may vest an estate in the trustee" (*Warren Co.*, *supra*, 153 Cal. at p. 775) is not binding precedent for how to interpret section 1095's phrase "an estate in real property." The statement in *Warren Co.* is based on language in former section 863 that has not been reenacted. (See *Recommendation*, *supra*, pp. 793–794.) The comment describing the repeal of former section 863 stated: "The first sentence of former Section 863 pertaining to the title vested in the trustee is omitted." (*Recommendation*, *supra*, at p. 793.) As a result, there no longer is a California statute providing that every express trust in real property vests the whole of the "estate" in the trustees.

In 1989, the Supreme Court stated: "In practical effect, if not in legal parlance, a deed of trust is a lien on the property." Thus, a trustee's reconveyance of its interest in the property after the debt secured by the deed of trust is satisfied "is nothing more than the release of the lien of the deed of trust." (*Monterey S. P. Partnership v. W. L. Bangham, Inc.* (1989) 49 Cal.3d 454, 460.) Despite the deed of trust conveying " 'title' to the trustee" (*ibid.*), the court did not describe the interest reconveyed as an estate in real property. As to the trustee's "title," it is conveyed to the trustee " 'only so far as may be necessary to the execution of the trust.' " (*Ibid.*) Consequently, the modern view of deeds of trust holds they technically pass title to the trustee, but that title is only nominal and "[t]he trustee has none of the attributes of an owner" because the incidents of title are retained by the trustor. (5 Miller & Starr, Cal. Real Estate, *supra*, § 13:2 [lien versus title theories], pp. 18–19; see *Bailey v. Citibank, N.A.* (2021) 66 Cal.App.5th 335, 353 ["a deed of trust carries none of the incidents of ownership of the property, other than the trustee's right to convey upon default" and "conveys no right of possession"].)

Accordingly, we conclude the trustee under a deed of trust holds nominal title to the property, but the deed of trust is properly characterized as a lien on the property and does not grant the trustee an estate in the real property. Consequently, we reject plaintiff's contention that MERS, as trustee under the deeds of trust, held a fee simple defeasible interest that is "an estate in real property" for purposes of section 1095.

This interpretation of section 1095 is consistent with how the California Supreme Court interpreted a statute governing the priority of mechanic liens. In *Rheem Mfg Co. v. United States* (1962) 57 Cal.2d 621, a company sold a parcel for cash and installments secured by a deed of trust. (*Id*. at p. 623.) The buyer contracted for improvements to be made to the parcel and allowed mechanics' liens to be asserted against the property. (*Id*. at pp. 623–624.) The litigation addressed whether the seller's recorded deed of trust had priority over the mechanics' liens. The relevant statute, former section 1183.1 of the Code of Civil Procedure, gave priority to mechanics' lien where the improvement was made with the knowledge of the landowner or of " 'any person having or claiming any estate therein' " unless such person recorded a notice of nonresponsibility within 10 days after obtaining knowledge of the work. (*Rheem Mfg.*, *supra*, at p. 624, fn. 2.) The Supreme Court stated the seller's "only interest in the property was for security purposes, and a security interest conveyed by *a deed of trust is not an estate in property* within the meaning of section 1183.1, subdivision (b)." (*Rheem Mfg.*, *supra*, at p. 625.) Because the company that sold the property and took back a purchase money deed of trust did not have any estate in the land, it was not required to record a notice of nonresponsibility to preserve the priority of its deed of trust over the mechanics' liens.

In addition, the interpretation that a deed of trust does not transfer "an estate in real property" for purposes of section 1095 is compatible with principles defining the role of a trustee under a deed of trust. A "trustee of a deed of trust is not a true trustee with fiduciary obligations, but acts merely as an agent for the borrower-trustor and lender-beneficiary." (*Yvanova*, *supra*, 62 Cal.4th at p. 927.) Upon default, "the trustee may take

49.

these steps only at the direction of the person or entity that currently holds the note and the beneficial interest under the deed of trust—the original beneficiary or its assignee—or that entity's agent."  (*Ibid*.)

Consequently, we conclude the holder of deed of trust does not have "an estate in real property" within the meaning of section 1095.

### 2. Theory That a Deed of Trust Creates a Power of Termination

We next consider plaintiff's contention that the deeds of trust created *powers of termination* that are properly characterized as an "estate" pursuant to section 701, which provides:  "In respect to real or immovable property, the *interests mentioned in this Chapter* are denominated estates, and are specially *named and classified in Part II of this Division*."  (Italics added.)

To satisfy the language in section 701 italicized above, plaintiff refers to the Marketable Record Title Act (§ 880.020 et seq.), quotes its definition of power of termination,[18] and cites subdivision (b) section 885.010, which states:  "A power of termination is an interest in the real property."  Because section 885.010 is in part 2 of division 2 of the Civil Code, plaintiff contends a power of termination is "specially

---

[18]    Subdivision (a) of section 885.010 provides:

"(1) 'Power of termination' means the power to terminate a fee simple estate in real property to enforce a restriction in the form of a condition subsequent to which the fee simple estate is subject, whether the power is characterized in the instrument that creates or evidences it as a power of termination, right of entry or reentry, right of possession or repossession, reserved power of revocation, or otherwise, and includes a possibility of reverter that is deemed to be and is enforceable as a power of termination pursuant to Section 885.020.

"(2) 'Power of termination' includes the power created in a transferee to terminate a fee simple estate in real property to enforce a restriction on the use of the real property in the form of a limitation or condition subsequent to which the fee simple estate is subject, whether the power is characterized in the instrument that creates or evidences it as an executory interest, executory limitation, or otherwise, and includes the interest known at common law as an executory interest preceded by a fee simple determinable."

named and classified in Part II of this Division" within the meaning of section 701. Next, plaintiff contends powers of termination are a "future interest in property" for purposes of section 703 and, therefore, are among "the interests mentioned in this Chapter [] denominated estates" as that phrase is used in section 701. Based on the language in sections 701, 703, and 885.010, plaintiff concludes that the power of termination purportedly created by a deed of trust is "an estate in real property" for purposes of section 1095.

We reject plaintiff's contention that a deed of trust contains a "power of termination" as that term is defined in section 885.010, because the power of sale in a deed of trust, when exercised, does not "terminate a fee simple estate in real property" as that phrase is used in either paragraphs (1) or (2) of subdivision (a) of section 885.010. Selling a fee simple estate at a foreclosure sale does not terminate (i.e., extinguish) the estate. Rather, the foreclosure sale and issuance and recordation of the trustee's deed upon sale *transfers* the estate from the borrower to the purchaser and, therefore, the estate once owned by the borrower continues to exist. (See generally, § 2924.12 [effect of recording a trustee's deed upon sale].) In short, the termination or extinguishment of an estate is different from a transfer by sale. Lastly, we note that plaintiff has not cited, and we have not located, any case, statute, or secondary authority equating a power of sale in a deed of trust with a power of termination.

III.   MOTION FOR NEW TRIAL

Plaintiff's motion for new trial argued the order of dismissal (1) prevented plaintiff from having a fair trial, (2) was "against law," and (3) was based on an error in law. (Code Civ. Proc., § 657, subds. 1, 6, 7; see *Long v. Forty Niners Football Co., LLC* (2019) 33 Cal.App.5th 550, 553, fn. 4 [party may bring a motion for new trial from a judgment of dismissal resulting from the sustaining of a demurrer].) Plaintiff's appellate briefing argues the trial court erred in denying its motion for new trial on the same

51.

grounds raised in the trial court. An order denying a motion for new trial is nonappealable, but the order may be reviewed on appeal from the underlying judgment. (*Walker v. Los Angeles County Metropolitan Transportation Authority* (2005) 35 Cal.4th 15, 18.) Accordingly, we consider the legal issues raised in the motion for new trial.

### A. Fairness and the Denial of the Application to File a Sur-Reply

Plaintiff's contention that an order prevented it from having a fair trial is based on the trial court's denial of plaintiff's ex parte application for leave to file a sur-reply to the reply memorandum of points and authorities in support of Wells Fargo's demurrer. The declaration of plaintiff's counsel filed in support of the application asserted: "As Wells Fargo's attacks on the FAC based on the statute of limitations, the <u>Glaski</u> theory and the §1095 theory are intended to convince this Court to sustain the Demurrer without leave to amend, Plaintiff felt it necessary to prepare a sur-reply … to the Reply to address those issues."

First, plaintiff's arguments about the statute of limitations does not establish the denial of its application to file a sur-reply was prejudicial because this court has not considered the statute of limitations as a ground for affirming the order sustaining the demurrer without leave to amend. Second, because this court has conducted an independent review of the legal issues relating to the *Glaski* theory and the section 1095 theory, the possibility that the trial court might have benefited from the exposition in the sur-reply does not affect the outcome of this appeal. In other words, the additional analysis presented in the proposed sur-reply has been considered by this court in concluding that the *Glaski* theory and the section 1095 theory lack merit and, thus, do not state a cause of action.

### B. Error in Law

Plaintiff's opening brief contains a single paragraph asserting it should be granted a new trial on the grounds of error in law relating to Wells Fargo's statute of limitations

defense, the *Glaski* theory, and the section 1095 theory. The paragraphs succinctly states those issues "have been dealt with herein. New trial should have been granted." In other words, the errors in law did not need to be described again because they were set forth in plaintiff's arguments that the demurrer should not have been sustained. Here, we take the same approach and do not repeat our discussion of why the *Glaski* theory and the section 1095 theory fail to state a viable cause of action. Our earlier conclusion that the trial court did not commit legal error in rejecting those theories leads us to conclude there was no "[e]rror in law" requiring the motion for new trial be granted. (Code Civ. Proc., § 657, subd. 7.)

      C.    <u>A Decision Against Law and the Equal Dignities Rule</u>

Plaintiff contends the trial court's decision is against law because, under California's equal dignities rule, the authority of an agent to sign a document required to be in writing must itself be in writing. Plaintiff argues the assignments executed by MERS did not comply with the equal dignities rule because (1) the MERS System Residential Membership Application does not authorize MERS to execute real property conveyances on behalf of members of the MERS System and (2) a deed of trust does not qualify as a writing creating the agency relationship for purposes of the equal dignities rule because the deed of trust is a one-party instrument signed by neither MERS nor the lender (i.e., the agent and the principal).

The equal dignities rule is derived from section 2309, which states in full: "An oral authorization is sufficient for any purpose, except that an authority to enter into a contract required by law to be in writing can only be given by an instrument in writing." Plaintiff contends this provision applies to an assignment of a deed of trust because Code of Civil Procedure section 1971 provides: "No estate or interest in real property ... can be … assigned … otherwise than by operation of law, or a conveyance or other instrument in writing, subscribed by the party … assigning … the same, or by the party's lawful

agent thereunto authorized by writing." (See *Remainders, Inc. v. Bartlett* (1963) 215 Cal.App.2d 295, 299 [lien upon real estate cannot be created by parol agreement].) Plaintiff asserts MERS's assignments of the deeds of trust are subject to these statutory provisions because liens upon real property (such as a deed of trust) must be in writing and, therefore, (1) the interest in real property created by a deed of trust can be assigned only by an instrument in writing and (2) the authority of an agent such as MERS to assign a deed of trust also must be in writing.

A theory that there is a defect in the foreclosing entity's chain of owner provides the basis for a wrongful foreclosure cause of action only if the defect renders the challenged assignment void rather than merely voidable. (See *Yvanova, supra*, 62 Cal.4th at p. 924.) Here, plaintiff has cited no authority supporting the principle that a failure of a principal and agent to comply with the equal dignities rule renders an agent's assignment of a deed of trust or other interest in real property void in the strict sense— that is, void *ab initio*. In the absence of explicit authority, we reject the contention that the assignments by MERS were void *ab initio* because of the principles of California law establishing (1) a transaction that does not comply with the equal dignities rule can be ratified (*van't Rood v. County of Santa Clara* (2003) 113 Cal.App.4th 549, 571; § 2310; 3 Schwing & Carr, Cal. Affirmative Defenses (2025) § 54:5, p. 893 [equal dignities rule – ratification]) and (2) transactions that can be ratified are merely voidable, not void from their inception (see *Yvanova, supra*, at pp. 929–930).[19]

To summarize, plaintiff has not demonstrated the alleged failures to comply with Code of Civil Procedure section 1971 and the equal dignities rule of section 2309

---

[19]    California law provides that an actual agency relationship may be created by ratification. (§ 2307.) The ratification must be made in the manner necessary to confer an original authority for the act in question. Consequently, where the equal dignities rule applies, the ratification must be in writing. (*van't Rood v. County of Santa Clara, supra,* 113 Cal.App.4th at p. 571; § 2310.)

rendered the challenged assignments void and, as a result, provide a basis for a wrongful foreclosure cause of action. Accordingly, we do not address Wells Fargo's argument that the deeds of trust are written instruments that authorized MERS to make the assignments as an agent of the lender.

## IV. PUBLICATION

We recognize that this opinion meets one or more grounds for publication because it resolves a question of statutory interpretation not addressed by the New York Court of Appeal or the California Supreme Court and it adopts an interpretation of Estates, Powers and Trusts section 7-2.4 different from that adopted by this court in *Glaski*, *supra*, 218 Cal.App.4th 1079. (See Cal. Rules of Court, rule 8.1105(c)(4)–(7).) We choose not to certify it for publication because the arguments, analysis, and record presented in subsequent appeals (case Nos. F088776 and F089098) may be more developed. Those appeals arise from orders of dismissal entered in favor of other defendants in the same superior court action and raise the same issues.

The analysis and record in the subsequent cases may be more developed because the record in this appeal does not include any "legislative proceedings" relating to the enactment of Estates, Powers and Trusts section 7-2.4 or its predecessors. (See NY Statutes, §§ 125 [when interpreting an ambiguous statute, "courts may utilize legislative proceedings to ascertain the legislative intent"]; 191 ["The intention of the Legislature, which is the primary consideration in the construction of amendments, is determined from the language of the statute or from extrinsic aids."].) Here, counsel for plaintiff argued the deletion of the word "absolutely" before the word "void" when Estates, Powers and Trusts section 7-2.4 was enacted simply eliminated a redundancy. In contrast, counsel for Wells Fargo argued the deletion shows the New York Legislature intended ultra vires action to be merely voidable. Neither argument was supported or contradicted by legislative materials because there are none in the appellate record.

55.

Similarly, the parties' arguments about the meaning of Estates, Powers and Trusts section 7-2.4's exception "any other provision of law" are not supported or contradicted by legislative materials or other extrinsic aids.

In addition, an example of how the analysis presented in the subsequent appeals might be more developed involves the provisions of General Construction Law and NY Statutes, none of which were cited in the appellate briefing presented in this appeal. In particular, subsequent briefing might address the application of NY Statutes sections 191 through 197 to Estates, Powers and Trusts section 7-2.4's reenactment or amendment of the predecessor statutes. (See e.g., NY Statutes, § 193 ["The Legislature, by enacting an amendment of a statute changing the language thereof, is deemed to have intended a material change in the law."].)[20]

On balance, we believe the prudent course is to publish an interpretation of Estates, Powers and Trusts section 7-2.4 in a subsequent appeal, rather than publishing this opinion.

## DISPOSITION

The December 14, 2023 order of dismissal is affirmed. Wells Fargo, as the prevailing respondent, shall recover its costs on appeal.

FRANSON, J.

WE CONCUR:

DETJEN, Acting P. J.

MEEHAN, J.

---

[20] The examples provided herein should not be interpreted by the parties in the subsequent appeals as an exclusive list of how the arguments, analysis, and record in those appeals might be developed beyond what was presented in this appeal.

56.